## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

| | |
|---|---|
| TAMARAH C. LOUIS and EMMANUEL G. LOUIS, JR., individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BLUEGREEN VACATIONS UNLIMITED, INC., a Florida corporation,<br><br>Defendant. | **CASE NO.:**<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs, TAMARAH C. LOUIS and EMMANUEL G. LOUIS, JR. (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, sues Defendant, BLUEGREEN VACATIONS UNLIMITED, INC. ("Bluegreen" or Defendant), a Florida corporation, and alleges:

## INTRODUCTION

1. This Complaint seeks to enforce the Military Lending Act ("MLA"), 10 U.S.C. § 987, which was enacted to protect members of the United States Military from an epidemic of predatory lending that endangers our Nation's military readiness and impacts service member retention.

2. Bluegreen is a company who finances loans for consumers to purchase interest in its vacation timeshare memberships nationwide.

3. In December 2020, Plaintiffs Emmanuel G. Louis, Jr. (active-duty status with the United States Army at the time) and his spouse, Tamarah Louis (collectively "Plaintiffs") obtained

financing to purchase a "Bluegreen Vacation Club" membership, which is a timeshare interest, from Bluegreen in Florida. To obtain the financing, Plaintiffs entered into the Bluegreen Owner Beneficiary Agreement ("Agreement") with Bluegreen, that was subject to MLA requirements. **Exhibit A** (Plaintiffs Bluegreen Owner Beneficiary Agreement).

4.      Plaintiffs' Agreement with Bluegreen is a standard form contract that Bluegreen employs nationwide, and requires all purchasers to hold the deed to their timeshare interest in the Bluegreen Vacation Club Trust ("Bluegreen Trust), which is a trust owned by Vacation Trust, Inc. ("Vacation Trust").  In return, Bluegreen grants purchasers annual "Vacation Points" that can be used to make a reservation at a Bluegreen owned vacation destination of their liking. For example, a one-week rental at a Bluegreen Timeshare in Orlando could be 10,000 Vacation Points. Vacation Points are the currency of Bluegreen timeshares and points can be purchased and traded between Bluegreen beneficiaries.

5.      Plaintiffs' Agreement with Bluegreen was subject to the MLA because Plaintiff Emmanuel G. Louis, Jr. was active-duty military at the time of Bluegreen's Agreement to lend him and his spouse money for the timeshare interest.

6.      The MLA requires Bluegreen to make a reasonable inquiry, when lending money, as to whether the borrower is a covered member under the MLA or not. As part of the implementing regulations of the MLA, a database was created to assist lenders with the identification of the borrowers that Congress sought to protect. Bluegreen does not make any inquiry when consumers, such as Plaintiffs and Class Members, obtain financing, let alone a reasonable inquiry before offering financing to members of the United States Military, in violation of the MLA. As a result, Bluegreen fails to comply with the MLA's requirements when lending for a timeshare interest.

7.     For example, the MLA requires certain mandatory disclosures to each covered borrower:

- A statement of the Military Annual Percentage Rate "MAPR" applicable to the extension of credit;

- Any disclosure Regulation Z requires made in accordance with the applicable Regulation Z provisions;[1] and

- A clear description of the payment obligation, which can be either a payment schedule for closed-end credit, or account opening disclosures consistent with Regulation Z for open-end credit, as applicable.

8.     Bluegreen fails to provide any of these mandatory disclosures under the MLA, in fact, Plaintiffs were never provided a MAPR. Because of this, the APR in Plaintiff's Agreement discloses an interest rate of 16.990%, but in reality, if Bluegreen had complied with the MLA and calculated an MAPR, their MAPR interest rate is actually 18.097 %.

9.     Additionally, the MLA prohibits lenders from requiring covered borrowers to submit to arbitration or other burdensome legal notice provisions in the case of a dispute. Bluegreen's Agreement with Plaintiffs and Class Members requires mandatory arbitration, which is further evidence of Bluegreen completely ignoring the MLA. **Exhibit A.**

10.     In protecting our military members, as "Penalties and Remedies" for violations of the MLA, Congress requires that, "any credit agreement, promissory note, or other contract prohibited under this section is void from the inception of such contract." 10 USC §987(f)(3).

11.     Upon information and belief, Bluegreen's business practices that fail to comply with the MLA are not limited to its Florida locations, instead, it is a nationwide scheme in that it fails to make any inquiry to determine a borrower's status that would prescribe MLA protections

---

[1] Bluegreen must provide the Regulation Z disclosures to the covered borrower before consummation of a closed-end transaction and before the first open-end transaction. See 12 CFR § 1026.17(b) and 12 CFR § 1026.5(b)(1)(i).

and disclosures. Because Bluegreen does not inquire of its borrowers about their status and because Bluegreen utilizes a standard form Agreement and method of calculation in determining the cost of credit disclosures on said contracts, this case is well suited for class action treatment for violations of the MLA.

12.     As a result of Bluegreen (a) failing to determine whether there is a covered borrower, and (b) failing to disclose a MAPR or how it was calculated, the APR that is disclosed to Plaintiffs and class members is significantly lower than the true MAPR.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction pursuant to 10 U.S.C.A. § 987, 28 U.S.C. §1331 and 1337.

14.     This Court has personal jurisdiction over Plaintiff and Defendant because Defendant is a Florida corporation that is also headquartered in Florida.

15.     Venue is proper in this district pursuant to 10 U.S.C.A. § 987 and 28 U.S. §1391.

## PARTIES

16.     At all times material hereto, Plaintiff Emmanuel G. Louis, Jr. was sui juris and a citizen of Florida

17.     At all material times hereto, Plaintiff Tamarah C. Louis was sui juris and a citizen of Florida.

18.     At all times material hereto, Bluegreen, was and is a Florida corporation, headquartered in Boca Raton, Florida. At all times material hereto, Bluegreen sold, sells, and finances timeshare interests throughout the United States, including Florida.

19.     At all times relevant hereto, Plaintiff Emmanuel G. Louis, Jr. was on active military duty status with the United States Army.

## FACTUAL ALLEGATIONS

### The Military Lending Act, 10 U.S.C. §987

20.     The United States Congress passed the Military Lending Act of 2006 (hereinafter "MLA") and was implemented as part of the John Warner National Defense Authorization Act for Fiscal Year 2007, Section 670, to protect military servicemembers from unfair or abusive loan or credit sale transactions, such as high interest, short-term, or installment loans to inexperienced military borrowers, who in years prior to enactment had fell victim to predatory lending.

21.     The MLA directs the Secretary of Defense ("DoD") to prescribe regulations to carry out the MLA. The DoD regulation, 32 CFR Part 232, implementing the MLA, contains limitations on and requirements for certain types of consumer credit extended to active-duty service members and their spouses, children, and certain other dependents ("covered borrowers").  Subject to certain exceptions, the regulation generally applies to persons who meet the definition of a creditor in Regulation Z and are engaged in the business of extending such consumer credit, as well as their assignees.

22.     That raises the question of what constitutes consumer credit? The MLA defines "consumer credit" as:

(1) Credit offered or extended to a covered borrower primarily for personal, family, or household purposes, and that is:

(i) Subject to a finance charge; or

(ii) Payable by a written agreement in more than four installments.

(2) Exceptions. Notwithstanding paragraph (f)(1) of this section, consumer credit does not mean:

(i) A residential mortgage, which is any credit transaction secured by an interest in a dwelling, including a transaction to finance the purchase or initial construction of the dwelling, any refinance transaction, home equity loan or line of credit, or reverse mortgage;

(ii) Any credit transaction that is expressly intended to finance the purchase of a motor vehicle when the credit is secured by the vehicle being purchased;

(iii) Any credit transaction that is expressly intended to finance the purchase of personal property when the credit is secured by the property being purchased;

(iv) Any credit transaction that is an exempt transaction for the purposes of Regulation Z (other than a transaction exempt under 12 CFR 1026.29) or otherwise is not subject to disclosure requirements under Regulation Z; and

(v) Any credit transaction or account for credit for which a creditor determines that a consumer is not a covered borrower by using a method and by complying with the recordkeeping requirement set forth in § 232.5(b)

32 CFR § 232.3 (emphasis added)

23.     A timeshare interest is not exempt from the MLA under 32 CFR § 232.3(f)(1) because it does not fall within the definition of a dwelling under the MLA. A dwelling means a residential structure that contains one to four units, whether or not the structure is attached to real property. The term includes an individual condominium unit, cooperative unit, mobile home, and manufactured home. 32 CFR § 232.3(k)

24.     Additionally, a key provision of both the initial regulation and the MLA sets a maximum "military annual percentage rate" ("MAPR") of 36 percent for credit extended to Service members and their dependents. Importantly, the MAPR used for purposes of the MLA regulation includes application fees and certain other fees not counted as finance charges when calculating the annual percentage rate under TILA and Regulation Z.

25.     Thus, the MAPR should include 1) any credit insurance premium or fee, any charge for single premium credit insurance, any fee for a debt cancellation contract, or any fee for a debt suspension agreement and 2) any fee for a credit-related ancillary product sold in connection with

the credit transaction for closed-end credit or an account for open-end credit pursuant to 32 C.F.R. § 232.4.

26.     Moreover, the MLA requires certain disclosure when a lender extends "consumer credit" to covered borrowers:

- A statement of the MAPR applicable to the extension of credit;

- Any disclosure Regulation Z requires made in accordance with the applicable Regulation Z provisions; and

- A clear description of the payment obligation, which can be either a payment schedule for closed-end credit, or account opening disclosures consistent with Regulation Z for open-end credit, as applicable.

27.     Specifically, the statement of the MAPR need not contain the MAPR for the transaction as a numerical value or dollar amount of charges in the MAPR. Instead, it must describe the charges you may impose, consistent with the MLA and terms of the agreement, to calculate the MAPR. The MLA provides a model statement and lenders may use the model statement or a substantially similar statement.

28.     The disclosures must be written and provided in a form the covered borrower can keep. In addition to the written disclosures, lenders must orally provide the information in the statement of MAPR and in the description of the payment obligation. You may do so in person or via a toll-free telephone number. If applicable, the toll-free telephone number must be on the application or on the written disclosures.

29.     The MLA places a duty on creditors to determine whether a potential borrower is a "covered borrower," and provides an easy to implement safe harbor to protect a creditor from liability if they reasonably implement the procedure. Specifically, the MLA permits creditors to use two methods when ascertaining whether a consumer is a covered borrower for purposes of the

MLA's protections: (1) The MLA Database maintained by the Department of Defense, and (2) consumer reports from a nationwide credit reporting agency.

30.     There are timing requirements for determining covered borrower status: lenders may determine covered borrower status, and keep the record of information obtained, only at the time:

a) A covered borrower initiates the transaction, or 30 days before that time;

b) A covered borrower applies to establish the account or 30 days before that time.

31.     The MLA also prohibits creditors from requiring military borrowers to submit to arbitration and waive legal rights, such as an award of punitive damages, under state and federal law.

32.     Bluegreen systematically fails to comply with these MLA requirements nationwide in their contracts with covered borrowers nationwide, who signed a contract substantially similar to the Agreement between Plaintiff and Bluegreen. **Exhibit A.**

33.     For violations of the MLA, Congress has required the following damages," any actual damage sustained as a result, but not less than $500 for each violation" and "any credit agreement, promissory note, or other contract prohibited under this section is void from the inception of such contract." 10 USC §987

**Bluegreen**

34.     Bluegreen is a lending creditor for timeshare interests throughout the United States.

35.     Bluegreen has financed thousands of timeshares totaling millions of dollars.

36.     It currently has over 65 timeshare locations and has provided tens of millions of dollars in timeshare loans to thousands of borrowers.

37.     Upon information and belief, Bluegreen employs standard form Owner Beneficiary Agreement for loans at all of their locations across the United States, with no relevant variations. **Exhibit 1** (Plaintiffs' Owner Beneficiary Agreement).

38.     Despite the MLA's grant of a safe harbor if either of these methods are used, upon information and belief, Bluegreen systematically fails to implement policies and procedures to ascertain whether a consumer is a military borrower subject to the MLA protections just as it did in the case of the Plaintiffs. Additionally, Bluegreen fails to make even the most basic inquiry as to whether its borrowers are subject to the MLA as part of its application process.

39.     Additionally, Bluegreen has uniformly and systematically failed to implement policies and procedures to ensure compliance with the MLA's mandatory written and oral disclosures and limitations as part of their standard form Owner Beneficiary Agreements that Bluegreen uses uniformly throughout the United States. There is no mention of MLA protections appearing anywhere on Plaintiffs' Owner Beneficiary Agreement and none were provided.

40.     Bluegreen's Owner Beneficiary Agreement that Plaintiffs and class members signed fails to describe the charges Bluegreen may impose, consistent with the MLA and terms of the agreement, and how Bluegreen calculates the MAPR. **Exhibit A.**

41.     For all covered borrowers, Bluegreen systematically fails to provide the mandatory oral disclosures, which includes the information in the statement of MAPR and in the description of the payment obligation. Bluegreen fails to do so in person and does not have a toll-free telephone number to call to receive them.  Additionally, there is no toll-free telephone number on the application nor on the written disclosures

42.     Bluegreen's standard form Owner Beneficiary Agreement that Plaintiffs and class members signed contains a mandatory arbitration agreement in violation of the MLA. **Exhibit A.**

43.     For covered borrowers, all of the Owner Beneficiary Agreements are void from inception because the MLA declares, "any credit agreement, promissory note, or other contract prohibited under this section is void from the inception of such contract." 10 USC §987.

**Plaintiffs' Loan**

44.     Plaintiff Emmanuel G. Louis, Jr. currently serves in the United States Army. Tamarah C. Louis is his spouse.

45.     On December 20, 2020, Plaintiffs signed a standard Owner Beneficiary Agreement with Bluegreen in order to obtain financing for a timeshare located at The Resort at World Golf Village Condominium, location in St. Augustine, Florida. A copy of the Owner Beneficiary Agreement is attached hereto as **Exhibit A.**

46.     Bluegreen was a "creditor" which provided "credit" to Servicemember Plaintiff Emmanuel G. Louis, Jr. and his dependent Plaintiff Tamarah C. Louis as those terms are defined in 32 C.F.R. §232.3(h) and (i).

47.     To obtain financing, Plaintiffs provided their social security number and other credit information to Bluegreen.  Bluegreen failed to provide any of the mandatory MLA disclosures to Plaintiffs of their rights pursuant to the MLA.

48.     In the "Purchase Terms" in Bluegreen's standard form Owner Beneficiary Agreement with Plaintiffs, the total amount Bluegreen financed to Plaintiffs stated $10,350.00 and the annual percentage rate was stated as 16.990%. **Exhibit A.** No Military Annual Percentage Rate (MAPR) was stated on any document provided to Plaintiffs.

49.     Bluegreen's standard form Owner Beneficiary Agreement fails to properly disclose the accurate finance charges as defined by the MLA, fails to provide the standard written MLA disclosures, and because the original creditors do not provide oral disclosures, the Agreements fail

to provide a method to obtain the oral disclosures as required by the MLA and the Code of Federal Regulations. Each of these failures are separate violations the MLA, which renders the contract void. 10 USC §987.

50.     Bluegreen's standard form Owner Beneficiary Agreement also contains a paragraph labeled "Mandatory Arbitration," which requires Plaintiffs to submit to arbitration for any dispute arising with Bluegreen, which is unlawful under the MLA and is a separate violation of the MLA, "Notwithstanding section 2 of title 9, or any other Federal or State law, rule, or regulation, no agreement to arbitrate any dispute involving the extension of consumer credit shall be enforceable against any covered member or dependent of such a member, or any person who was a covered member or dependent of that member when the agreement was made." 10 U.S.C. §987(f)(4).

51.     Upon information and belief, Bluegreen has entered into thousands of contracts financing credit-related costs identical to Plaintiffs' Agreement, which also include unlawful mandatory arbitration provisions.

52.     Each Bluegreen standard form Owner Beneficiary Agreement executed by a servicemember, their spouse or a dependent of a servicemember is void under the MLA where it (a) fails to provide the written and oral disclosures required by the MLA, and (b) contains a mandatory arbitration clause. 10 U.S.C. §987.

53.     Bluegreen's failure to provide the required MLA MAPR written and oral disclosures caused Plaintiffs actual damages because his true MAPR is 18.097%, which is higher than the APR of 16.990% that was disclosed and calculated in the Agreement between Plaintiffs and Bluegreen. Plaintiffs' MAPR is calculated as follows:

| Statement of Military Annual Percentage Rate (MAPR) | |
|---|---|

Contract Date:        1/19/2021

| | |
|---|---|
| Loan administration fee | $450.00 |
| Down payment | $1,600.00 |
| | |
| **Finance charge** | **$12,923.60** |
| **Amount financed** | **$11,050.00** |
| **Total number of payments** | **120** |
| **Total of payments** | **$23,973.60** |
| **Total sale price** | **$25,573.60** |
| | |
| **CALCULATED MILITARY APR:** | **18.097%** |

54.    Bluegreen's failure to provide the MAPR resulted in Plaintiffs' MAPR being higher than the APR that they thought he was paying. As a result, Plaintiffs thought they were paying an interest rate of 16.990%, but in reality, their concealed MAPR was much higher.

55.    As a result of Bluegreen's MLA violations, Plaintiffs have suffered actual damages because they paid money to defendant based on an illegal contract without the benefit of the MLA disclosures and are entitled to rescission of contract.

## CLASS ALLEGATIONS

56.    Plaintiffs bring this case as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure. The proposed "Class" includes the following:

> **MLA Disclosure Class:** All covered borrowers, as defined under the MLA, who entered into an Owner Beneficiary Agreement with Bluegreen in substantially the same form as Exhibit A that did not contain a Military Annual Percentage Rate (MAPR) disclosure.

57.    Expressly excluded from the Class are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendant and any entity in which Defendant has a controlling interest, or which has a controlling interest in Defendant, and its legal representatives, assigns and successors; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

58.     Plaintiffs reserve the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.

**Rule 23(a) Criteria**

59.     <u>Numerosity</u>. Bluegreen's scheme has harmed and continues to harm military consumers. The members of the proposed Class are so numerous that joinder of all members is impracticable.

60.     The exact number of Class members is unknown as such information is in the exclusive control of Bluegreen. However, upon information and belief, Bluegreen is a large lender in the timeshare industry in the United States. It currently has thousands of customers and over 65 timeshare locations.

61.     <u>Commonality</u>. Common questions of law and fact affect the right of each Class member and common relief by way of damages is sought for Plaintiffs and Class members.

62.     The harm that Bluegreen has caused or could cause is substantially uniform with respect to Class members. Common questions of law and fact that affect the Class members include, but are not limited to:

    a.     Whether Bluegreen entered into standard form Owner Beneficiary Agreement with servicemembers and their dependents;

    b.     Whether the cost of the timeshare interest is consumer credit under the MLA;

    c.     Whether Bluegreen failed to provide required MLA written and oral disclosures;

    d.     Whether Bluegreen failed to provide accurate MAPR disclosures;

e.      Whether Bluegreen's standard form Owner Beneficiary Agreement contain an arbitration clause in violation of the MLA;

f.      Whether Bluegreen failed to determine if Plaintiffs and class members were covered borrowers;

g.      Whether the Owner Beneficiary Agreements are void and what the appropriate remedy should be; and

h.      Whether members of the Class have sustained damages in addition to statutory damages and, if so, the proper measure of such damages;

63.     <u>Typicality</u>. The claims and defenses of the representative Plaintiffs are typical of the claims and defenses of the Class because Plaintiff Emmanuel G. Louis, Jr. is an active-duty member of the United States Military along with his spouse Tamarah C. Louis and this transaction with the Bluegreen was typical of the type of timeshare purchase arrangement that Bluegreen normally does. The documents involved in the transaction were standard form documents and the violations are statutory in nature. Plaintiffs suffered statutory and actual damages of the same type and in the same manner as the Class he seeks to represent. There is nothing peculiar about Plaintiffs' claims.

64.     <u>Adequacy</u>. The representative Plaintiffs will fairly and adequately assert and protect the interests of the Class. Plaintiffs have no conflict of interest that will interfere with maintenance of this class action. They have hired attorneys who are experienced in prosecuting class action claims and consumer protection laws and will adequately represent the interests of the class.

**Rule 23 (b) Criteria**

65.     <u>Predominance and Superiority</u>. A class action provides a fair and efficient method for the adjudication of this controversy for the following reasons:

a. The common questions of law and fact set forth herein predominate over any questions affecting only individual Class members. The statutory claims under the MLA require a simple identification of those consumers who are covered members under the statute accomplished through the MLA database, an act that could have and should have been done at the time of application.

b. The Class is so numerous as to make joinder impracticable. However, the Class is not so numerous as to create manageability problems. There are no unusual legal or factual issues that would create manageability problems;

c. Prosecution of a separate action by individual members of the Class would create a risk of inconsistent and varying adjudications against Defendant when confronted with incompatible standards of conduct;

d. Adjudications with respect to individual members of the Class could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications, or substantially impair their ability to protect their interests;

e. Upon information and belief, Bluegreen is responsible for violating the MLA within this District, making this forum appropriate for the litigation of the claims of the entire Class; there are very few attorneys in the United States with any expertise or experience in this nascent area of law making it nearly impossible for class members to find adequate representation; and the claims of the individual Class members are small in relation to the expenses and efforts required by the litigation, making a Class action the

only procedural method of redress in which Class members can, as a practical matter, recover.

66.     Bluegreen has acted and refused to act on grounds generally applicable to the Class, thereby making declaratory relief and corresponding final injunctive relief under Rule 23(b)(2) appropriate with respect to the Classes as a whole. Bluegreen should be enjoined from financing to consumers without making a reasonable effort to determine whether a borrower is protected by the MLA, and from entering into agreements with covered borrowers without providing mandated written and oral disclosures so that servicemembers and their dependents can base their credit decisions on correct costs of credit disclosures required by the MLA. Bluegreen should additionally be enjoined from including arbitration clauses in their Owner Beneficiary Agreements that are subject to MLA protection.

## COUNT I
### Violation of the Military Lending Act
### 10 U.S.C. §987(c)(1)
### (MLA Disclosure Class)

67.     Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 66 as if set forth herein in full.

68.     Servicemember Plaintiff Emmanuel G. Louis, Jr. was a "covered borrower" and "covered member" as those terms are defined pursuant to 32 C.F.R. § 232.3(g).

69.     Plaintiff Tamarah C. Louis was a "covered borrower" and "covered member" as those terms are defined pursuant to 32 C.F.R. § 232.3(g) as a dependent.

70.     Bluegreen was a "creditor" which provided "credit" to Servicemember Plaintiff Emmanuel G. Louis, Jr. and his dependent Plaintiff Tamarah C. Louis as those terms are defined in 32 C.F.R. §232.3(h) and (i).

71.     On December 20, 2020, Plaintiffs entered into a standard form Owner Beneficiary Agreement with Bluegreen, which was utilized for all Class members, that financed credit-related costs in amounts in excess of the costs of Plaintiffs' and Class members' timeshares, subjecting Bluegreen to MLA regulations.

72.     Plaintiffs' and Class members' standard form Owner Beneficiary Agreements do not provide required MLA written and oral disclosures in the manner required by 10 U.S.C. § 987 and 32 CFR § 232.6.

73.     Specifically, MLA requires the following mandatory loan disclosures be made to a covered borrower before or at the time the borrower becomes obligated on a closed-end transaction of the type involved here:

A.     A statement of the applicable MAPR;
B.     Any disclosures required by Regulation Z;
C.     A clear description of the payment obligation which would include a payment schedule for this closed-end credit.

74.     The written MAPR disclosures do not need to be expressed in a numerical value and may be made in the contract itself or may be given on a separate document. The CFR even provides in section (c)(3) model disclosure language to satisfy this requirement which explains to the borrower costs of credit transaction by describing some of the fees and costs that must be included in the annual percentage rate.

75.     Bluegreen did not provide a MAPR disclosure orally or written to Plaintiffs and class members.

76.     The annual percentage rate when properly calculated pursuant to the MLA is known as the Military Annual Percentage Rate or "MAPR" and should include 1) any credit insurance premium or fee, any charge for single premium credit insurance, any fee for a debt cancellation contract, or any fee for a debt suspension agreement and 2) any fee for a credit-related ancillary

product sold in connection with the credit transaction for closed-end credit or an account for open-end credit pursuant to 32 C.F.R. § 232.4. Using an MAPR calculator, the true MAPR for Plaintiffs was 18.097% and not 16.990%. Bluegreen did not include these costs in its cost of credit disclosures to Plaintiffs or to Class members.

77.     Plaintiffs and Class members incurred damages as a direct and proximate result of Bluegreen's violation of 10 U.S.C. § 987(c)(1) by their standard form Owner Beneficiary Agreements by failing to provide the mandatory MLA disclosures under 10 U.S.C. § 987(c)(1).

78.     The MLA's "Penalties and Remedies" subsection provides, in part, that "any credit agreement, promissory note, or other contract prohibited under this section is void from the inception of such contract." 10 U.S.C. § 987(f)(3).

79.     The United States Supreme Court has held that "when Congress declare[s] in [a statute] that certain contracts are void, it intend[s] that the customary legal incidents of voidness follow, including the availability of a suit for rescission or for an injunction against continued operation of the contract, and for restitution." *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, at 19 (1979).

80.     As a direct and proximate cause of Bluegreen's violation, Plaintiffs and the Class are entitled to statutory damages of $500 per violation, actual and punitive damages along with injunctive relief pursuant to the MLA 10 U.S.C. § 987(f)(5)(A).

81.     As a result of Bluegreen's MLA violations, Plaintiffs have suffered actual damages because they paid money to defendant based on an illegal contract without the benefit of the MLA disclosures and are entitled to rescission of contract.

82.     Plaintiffs and the Class are entitled to attorneys' fees and costs pursuant to the MLA 10 U.S.C. § 987(f)(5)(B).

## COUNT II
### Violation of the Military Lending Act
### 10 U.S.C. §987(c)(1)
### (MLA TILA Disclosure Class)

83.     Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 66 as if set forth herein.

84.     Servicemember Plaintiff Emmanuel G. Louis, Jr. was a "covered borrower" and "covered member" as those terms are defined pursuant to 32 C.F.R. § 232.3(g).

85.     Plaintiff Tamarah C. Louis was a "covered borrower" and "covered member" as those terms are defined pursuant to 32 C.F.R. § 232.3(g) as a dependent.

86.     Bluegreen was a "creditor" which provided "credit" to Servicemember Plaintiff as those terms are defined in 32 C.F.R. § 232.3(h) and (i).

87.     On December 20, 2020, Plaintiffs entered into a standard form Owner Beneficiary Agreement with Bluegreen, which was utilized for all Class members, that financed credit-related costs in amounts in excess of the costs of Plaintiffs' and Class members' timeshares, subjecting Bluegreen to MLA regulations.

88.     Specifically, the identifiable credit-related cost Bluegreen financed was an Administrative Fee ($450.00). *See* **Exhibit A**.

89.     Plaintiffs' and Class members' standard form Owner Beneficiary Agreements provide standard TILA disclosures which do not include these costs in the disclosures and, therefore, under-disclosed the true cost of credit to Plaintiff and Class members under the Owner Beneficiary Agreements. In other words, the costs of their credit is significantly more than the Bluegreen disclosures state and in the case of the Plaintiffs' MPAR was 1.107% higher than what was listed in the TILA disclosures:

| Statement of Military Annual Percentage Rate (MAPR) | |
|---|---|
| Contract Date:   1/19/2021 | |

| | |
|---|---|
| Loan administration fee | $450.00 |
| Down payment | $1,600.00 |
| **Finance charge** | **$12,923.60** |
| **Amount financed** | **$11,050.00** |
| **Total number of payments** | **120** |
| **Total of payments** | **$23,973.60** |
| **Total sale price** | **$25,573.60** |
| **CALCULATED MILITARY APR:** | **18.097%** |

90.     The MLA requires the following mandatory loan disclosures:

(1)     Information required.--With respect to any extension of consumer credit (including any consumer credit originated or extended through the internet) to a covered member or a dependent of a covered member, a creditor shall provide to the member or dependent the following information orally and107 in writing before the issuance of the credit:

(A)     A statement of the annual percentage rate of interest applicable to the extension of credit.

(B)     Any disclosures required under the Truth in Lending Act (15 U.S.C.1601 *et seq*.).

(C)     A clear description of the payment obligations of the member or dependent, as applicable.

91.     The annual percentage rate when properly calculated pursuant to the MLA is known as the Military Annual Percentage Rate or "MAPR" and should include 1) any credit insurance premium or fee, any charge for single premium credit insurance, any fee for a debt cancellation contract, or any fee for a debt suspension agreement and 2) any fee for a credit-related ancillary product sold in connection with the credit transaction for closed-end credit or an account for open-end credit. 32 C.F.R. § 232.4. The true MAPR for Plaintiffs was 18.097 % and not 16.990%. Bluegreen did not include these costs in its cost of credit disclosures to Plaintiffs or to Class members.

92.     Specifically, Bluegreen failed to include at minimum the following credit-related costs in its APR calculation: an administrative fee ($450.00). *See* **Exhibit A**.

93.     Plaintiffs and Class members incurred damages as a direct and proximate result of Bluegreen's violation of 10 U.S.C. § 987(c)(1). Plaintiffs and Class members have been harmed and suffered actual damages (as defined by the MLA) by their standard form Owner Beneficiary Agreements failing to provide the mandatory MLA disclosures under 10 U.S.C. § 987(c)(1).

94.     The MLA's "Penalties and Remedies" subsection provides, in part, that "any credit agreement, promissory note, or other contract prohibited under this section is void from the inception of such contract." 10 U.S.C. § 987(f)(3).

95.     The United States Supreme Court has held that "when Congress declare[s] in [a statute] that certain contracts are void, it intend[s] that the customary legal incidents of voidness follow, including the availability of a suit for rescission or for an injunction against continued operation of the contract, and for restitution." *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, at 19 (1979).

96.     As a direct and proximate cause of Bluegreen's violation, Plaintiffs and the Class are entitled statutory damages of $500 per violation, actual and punitive damages along with injunctive relief pursuant to the MLA 10 U.S.C. § 987(f)(5)(A).

97.     As result of Bluegreen's MLA violations, Plaintiffs have suffered actual damages because they paid money to defendant based on an illegal contract without the benefit of the MLA disclosures and are entitled to a rescission of their contract.

98.     Plaintiffs and the Class are entitled to attorneys' fees and costs pursuant to the MLA 10 U.S.C. § 987(f)(5)(B).

**COUNT III**
**Violation of the Military Lending Act**
**10 U.S.C. 987 (e)(3)**
**(On Behalf of the Arbitration Clause Class)**

99.    Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 66 as if set forth herein.

100.    Servicemember Plaintiff Emmanuel G. Louis, Jr. was a "covered borrower" and "covered member" as those terms are defined pursuant to 32 C.F.R. § 232.3(g).

101.    Plaintiff Tamarah C. Louis was a "covered borrower" and "covered member" as those terms are defined pursuant to 32 C.F.R. § 232.3(g) as a dependent.

102.    Bluegreen was a "creditor" which provided "credit" to Plaintiff as those terms are defined in 32 C.F.R. §232.3(h) and (i).

103.    On December 20, 2020, Plaintiffs entered into a standard form Owner Beneficiary Agreement with Bluegreen, which was utilized for all Class members, that financed credit-related costs in amounts in excess of the costs of Plaintiffs' and Class members' timeshares, subjecting Bluegreen to MLA regulations.

104.    Plaintiffs' and Class members' Owner Beneficiary Agreements contain a mandatory arbitration clause under the paragraph titled "MANDATORY ARBITRATION" which states that it applies to "all claims, disputes, actions questions, or differences, whether based in or upon contract, tort, statute, fraud, deception, misrepresentation or any other legal theory. . . ." *See* **Exhibit A.**

105.    The MLA 10 U.S.C. § 987(e)(3) declares that requiring covered borrowers to submit to arbitration is unlawful:

Limitations. —It shall be unlawful for any creditor to extend consumer credit to a covered member or a dependent of such a member with respect to which—

(3)  the creditor requires the borrower to submit to arbitration or imposes onerous legal notice provisions in the case of a dispute.

106.    Bluegreen's Owner Beneficiary Agreement's mandatory arbitration provision violates Plaintiffs' and Class members' MLA 10 U.S.C. § 987(e)(3) rights prohibiting agreements that require arbitration to resolve disputes.

107.    As a direct and proximate result of Bluegreen's violation of 10 U.S.C. §987(e)(3). Plaintiffs and Class members have been harmed and suffered actual damages (as defined by the MLA) by their standard form Owner Beneficiary Agreements containing unlawful provisions requiring arbitration to resolve disputes with Bluegreen.

108.    The MLA's "Penalties and Remedies" subsection provides, in part, that "any credit agreement, promissory note, or other contract prohibited under this section is void from the inception of such contract." 10 U.S.C. § 987(f)(3).

109.    The United States Supreme Court has held that "when Congress declare[s]in [a statute] that certain contracts are void, it intend[s] that the customary legal incidents of voidness follow, including the availability of a suit for rescission or for an injunction against continued operation of the contract, and for restitution." *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, at 19 (1979).

110.    Thus, all Bluegreen Owner Beneficiary Agreements substantially similar to Plaintiffs' Owner Beneficiary Agreement entered into with a covered borrower and/or dependent containing a "mandatory arbitration" are void, must be either reformed or rescinded, and restitution must be paid for all amounts paid by class members to Bluegreen, "[b]y declaring certain contracts void, [the MLA] by its terms necessarily contemplates that the issue of voidness under its criteria may be litigated somewhere[,]" for "[a] person with the power to void a contract ordinarily may resort to a court to have the contract rescinded and to obtain restitution of consideration paid." *Id.*

at 18, 100 S.Ct. 242. This scheme "displays a [congressional] intent to create not just a private right but also a private remedy." *Alexander v. Sandoval*, 532 U.S. 275, at 286 (2001) (citing *Transamerica*, 444 U.S. at 15, 100 S.Ct. 242).

111.    Plaintiffs and the Class seek statutory damages in the amount of $500 per statutory violation, actual and punitive damages, along with injunctive relief pursuant to the MLA 10 U.S.C. § 987(f)(5)(A).

112.    As a result of Bluegreen's MLA violations, Plaintiffs have suffered actual damages because they paid money to defendant based on an illegal contract without the benefit of the MLA disclosures and are entitled to rescission of contract.

113.    Plaintiffs and the Class seek attorneys' fees and costs pursuant to the MLA 10 U.S.C. § 987(f)(5)(B).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs prays that the Court enter an Order:

A.    Certifying this action as a class action as provided by Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as Class Representatives, and appointing undersigned as Class Counsel;

B.    Declaring that Bluegreen violated the MLA, and adjudging that Plaintiffs' and Class members' Owner Beneficiary Agreements are void and determining appropriate relief in the form of rescission, restitution or reformation;

C.    Adjudging that Bluegreen violated the MLA and award Plaintiffs and Class members statutory damages of $500 per violation, actual and punitive damages pursuant to 10 U.S.C. § 987(f)(5)(A);

D.      Awarding Plaintiffs, and all those similarly situated, reasonable attorneys' fees and costs incurred in this action pursuant to 10 U.S.C. § 987(f)(5)(B);

E.      Enjoining Bluegreen from financing to consumers without making a reasonable effort to determine whether a borrower is protected by the MLA;

F.      Enjoining Bluegreen from further violating the MLA with their Owner Beneficiary Agreements and requiring future contracts with covered borrowers to provide proper disclosures pursuant to the MLA;

G.      Awarding Plaintiffs, and all those similarly situated, any pre-judgment and post-judgment interest as may be allowed under the law; and

H.      Awarding such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMAND**

Plaintiff demands a jury trial on all issues so triable.

Dated: September 14, 2021

_Janet R. Varnell_
Janet R. Varnell, FBN: 0071072
Matthew T. Peterson, FBN: 1020720
VARNELL & WARWICK, P.A.
1101 E. Cumberland Ave.
Suite 201H, #105
Tampa, Florida 33602
Tel: 352-753-8600
Fax: 352-504-3301
jvarnell@vandwlaw.com
mpeterson@vandwlaw.com

*Counsel for Plaintiffs, individually and on behalf of all others similarly situated*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Janet R. Varnell*
Janet R. Varnell

# EXHIBIT A

**BLUEGREEN OWNER BENEFICIARY AGREEMENT**
**BLUEGREEN VACATION CLUB**
**[TRADEWINDS SELLING THE RESORT AT WORLD GOLF VILLAGE CONDOMINIUM INVENTORY]**

MULTI-SITE TIMESHARE PLAN: BLUEGREEN VACATION CLUB
DEVELOPER/SELLER:  BLUEGREEN VACATIONS UNLIMITED, INC.
4960 CONFERENCE WAY N, STE 100, BOCA RATON, FLORIDA 33431-3311

Contract Reference #: 2709737

| Purchaser(s) | **TAMARAH C LOUIS** | Social Security No. |  |
|---|---|---|---|
| | **EMMANUEL G LOUIS JR** | Social Security No. | |

| Street Address | | Phone(Home) | | | |
|---|---|---|---|---|---|
| City | | State | | Zip | |
| | | | | Country | **UNITED STATES OF AMERICA** |

Developer/Seller agrees to sell, and the Purchaser agrees to purchase a timeshare estate, being the Property described below. The Property shall be acquired and accepted by the Purchaser upon the following terms and conditions and, in connection therewith, Purchaser is to be designated as an Owner Beneficiary and allocated Vacation Points as set out below. By execution of this Bluegreen Owner Beneficiary Agreement, Purchaser voluntarily appoints and designates the Trustee as his/her lawful agent to be delivered the deed to the Property described below.

By execution hereof, Purchaser is designated an Owner Beneficiary under the Bluegreen Vacation Club Trust Agreement, which was made and entered into as of the 18th day of May 1994, as amended and restated, by and between Developer/Seller and Vacation Trust, Inc., a Florida corporation, as Trustee (the "Trust Agreement"). Each Owner Beneficiary is entitled to exercise Owner Beneficiary Rights. Owner Beneficiary Rights include as an appurtenance thereto an allocation of the below-described Vacation Points and the right to be conveyed, subject to the terms of the Trust Agreement, the below-described Property upon termination of the Trust Agreement. The Vacation Points represent the opportunity to use and enjoy Accommodations and Facilities subject to the Trust Agreement and have been determined in relation to current occupancy demand for the below described Property. The Property is defined as Vacation/Unit Week No. or as an undivided interest in a particular phase of the Resort as may be further described in the deed for such Property.

Resort Name: **THE RESORT AT WORLD GOLF VILLAGE CONDOMINIUM**  Resort Address:  **335 S. LEGACY, ST. AUGUSTINE, FL 32092**

Accommodation(s) consisting of: Condominium Unit  No. / Vacation Week No. [together with "F" (Full Timeshare Interest) or "E" or "O" (Biennial Timeshare Interest/Even or Odd)]:  **214/13O**

The Vacation/Unit Week No., above set forth, and the Vacation Points associated therewith, are either designated as Annual (by use of the letter "F", indicating a full Timeshare Interest) or Biennial (by use of the letter "E" or "O", indicating Even Numbered or Odd Numbered Years and one half of a Timeshare Interest).  An Annual Vacation/Unit Week No. with Annual Vacation Points means the period of time during which the owner thereof is afforded the opportunity to use the Accommodations of the Plan on an annual recurring basis.  A Biennial Vacation/Unit Week No. with Biennial Vacation Points means the period of time during which the owner thereof is afforded the opportunity to use the Accommodations of the timeshare Plan on a biennial recurring basis.  A Vacation/Unit Week No. created initially as an Annual Vacation/Unit Week No. or a Biennial Vacation/Unit Week No. shall remain so.  For purposes of this Agreement, the following definitions shall be controlling:

"Biennial" means every other year and the same shall be determinative on a calendar year basis, except as otherwise provided herein.
"Odd Numbered Years" means those years ending in 1, 3, 5, 7 or 9 and the same shall be determinative on a calendar year basis.
"Even Numbered Years" means those years ending in 2, 4, 6, 8 or 0 and the same shall be determinative on a calendar year basis.

The number of Vacation Points allocated to the Property and the Owner Beneficiary Rights and the designation as "F," "E" or "O" as described below is: **8,000 O.**

Allocated Vacation Points are used to determine occupancy of Accommodations and Facilities during an Owner's Use Year, although no additional consideration is paid for occupancy allowed by Vacation Points allocated to a respective Owner Beneficiary. The Owner's Use Year commences the first day of the month following execution of this Agreement by Purchaser and Developer/Seller, terminates upon expiration of twelve (12) months following such commencement, and recurs for each succeeding twelve (12) months thereafter. Biennial Vacation Points allow occupancy and use of accommodations only during alternate Owner Use Years, beginning with the initial Owner Use Year following the purchase of the Property, except as otherwise provided herein.  Such uses are also subject to provisions for saving and borrowing of Vacation Points, as explained elsewhere herein.

Purchaser shall be obligated to pay Common Assessment Fees and Club Dues in accordance with Part E of the Trust Fund Budget as set forth in Paragraph 4 hereof.

**PURCHASE TERMS**

1. Purchase Price of Property payable by Purchaser. ....................... $11,500.00
2. Down Payment ( **10.00%** of Line 1). ....................... $ 1,150.00
3. Administrative Fee. ....................... $ 450.00
4. State/Local Sales Tax (**0.0000000** of Line 1). ....................... $ 0.00
5. Total Due from Purchaser (U.S. Funds) (Add Lines 1, 3, and 4). ....................... $ 11,950.00
6. Initial Deposit Received $ **1,600.00** (CK, MO, MC/VISA, AMEX, DISC). ....................... $ 1,600.00
7. Balance of Deposit Required on or before **N/A.** ....................... $ 0.00
8. Total Deposit Received (Add Lines 6 and 7). ....................... $ 1,600.00
9. Amount Financed $ **10,350.00** for **120** months at **16.990%** (Line 5 minus line 8).
10. Monthly Payments of: $ **179.81** beginning on **January 19, 2021.**

Seller pays all Closing Costs including Recording Fees, Transfer Tax, Title Search, Title Insurance, Settlement Fee and other fees related to transfer of the Property to Trustee.

Purchaser agrees to have **Resort Title Agency, Inc. or its underwriter.** issue lender's title insurance policy:

Pre-Authorized Check Plan Accepted (Initial if "Yes"):

I have reviewed and agree to the **Purchase Terms** above:

## REQUIRED DISCLOSURES AND SIGNATURES ON THE NEXT PAGE

THIS AGREEMENT IS SUBJECT TO ALL TERMS AND CONDITIONS HEREAFTER SET FORTH, OR ATTACHED HERETO WHICH ARE INCORPORATED HEREIN BY REFERENCE.   BY SIGNING BELOW, PURCHASER ACKNOWLEDGES HAVING READ AND AGREED TO ALL SUCH TERMS AND CONDITIONS AND FURTHER ACKNOWLEDGES RECEIPT OF THE BLUEGREEN VACATION CLUB MULTI-SITE PUBLIC OFFERING STATEMENT AND ANY APPLICABLE EXCHANGE COMPANY DISCLOSURE STATEMENT.

NO PURCHASER SHOULD RELY UPON REPRESENTATIONS OTHER THAN THOSE INCLUDED IN THIS AGREEMENT AND IN THE DOCUMENTS REFERRED TO HEREIN.

YOU MAY CANCEL THIS CONTRACT WITHOUT ANY PENALTY OR OBLIGATION WITHIN TEN (10) CALENDAR DAYS AFTER THE DATE YOU SIGN THIS CONTRACT OR THE DATE ON WHICH YOU RECEIVE THE LAST OF ALL DOCUMENTS REQUIRED TO BE GIVEN TO YOU PURSUANT TO SECTION 721.07(6), FLA STATUTES, WHICHEVER IS LATER.  IF YOU DECIDE TO CANCEL THIS CONTRACT, YOU MUST NOTIFY THE SELLER IN WRITING OF YOUR INTENT TO CANCEL.  YOUR NOTICE OF CANCELLATION SHALL BE EFFECTIVE UPON THE DATE SENT AND SHALL BE SENT TO:  BLUEGREEN VACATIONS UNLIMITED, INC.,  ATTN: CORPORATE SALES ACCOUNTING DEPARTMENT, 4960 CONFERENCE WAY N STE 100, BOCA RATON FL 33431-3311.  ANY ATTEMPT TO OBTAIN A WAIVER OF YOUR CANCELLATION RIGHTS IS VOID AND OF NO EFFECT.  WHILE YOU MAY EXECUTE ALL CLOSING DOCUMENTS IN ADVANCE, THE CLOSING, AS EVIDENCED BY DELIVERY OF THE DEED OR OTHER DOCUMENT BEFORE EXPIRATION OF YOUR TEN (10) DAY CANCELLATION PERIOD, IS PROHIBITED.

PURCHASER(S):

_____     12/20/2020
TAMARAH C LOUIS                     (Date)

_____     12/20/2020
EMMANUEL G LOUIS JR                 (Date)

DEVELOPER/SELLER:
BLUEGREEN VACATIONS UNLIMITED, INC.

_____     12/20/2020
Authorized Agent                    (Date)

'Notify' shall mean that a written notice of cancellation is delivered by any means, which may include certified mail, return receipt requested, to Bluegreen Vacations Unlimited, Inc.  It is a violation of F.S. Ch. 721 for any person to interfere with the delivery of a notice of cancellation by a purchaser.

**TERMS AND CONDITIONS**

1.  **TRUST AGREEMENT.**  The Bluegreen Vacation Club multi-site timeshare plan has been established pursuant to the Trust Agreement (timeshare instrument) and related documents. Vacation Trust, Inc., a Florida corporation, currently acts as the Trustee of the Trust Agreement. The address of Vacation Trust, Inc. is 4950 Communication Avenue, Suite 900, Boca Raton, FL 33431. Each Purchaser pursuant to an Owner Beneficiary Agreement is designated as an Owner Beneficiary pursuant to the terms of the Trust Agreement. The interest of each Owner Beneficiary under the Trust Agreement consists of and is identified as the right to performance by the Trustee of its obligations as set forth in the Trust Agreement. Each Owner Beneficiary's right to performance by the Trustee includes the Trustee holding title or Occupancy Rights relating to the Accommodations and Facilities within the Bluegreen Vacation Club Trust Estate as agent for each Owner Beneficiary and for the beneficial use and enjoyment of each Owner Beneficiary and the right, subject to the terms of the Trust Agreement, to have the Property conveyed to the Owner Beneficiary named herein upon termination of the Trust Agreement. The Owner Beneficiaries are entitled to use, occupy and enjoy the Property (including Occupancy Rights related to the Property) within the Bluegreen Vacation Club Trust Estate, subject to availability and to the terms of the Trust Agreement and related instruments.

(a)The timeshare interest being sold and acquired hereunder consists of the Property described above, being a fee simple real estate timeshare estate and, in connection therewith, Purchaser is designated as Owner Beneficiary entitled to the Owner Beneficiary Rights and appurtenant Vacation Points referred to above. Owner Beneficiary Rights include the right to use, occupy and enjoy the Accommodations and Facilities within the Bluegreen Vacation Club Trust Estate coupled with the freehold estate conveyed to the Trustee by Developer/Seller or its affiliate on behalf of the Purchaser upon Purchaser becoming an Owner Beneficiary under the Trust Agreement. Owner Beneficiary Rights are an interest in the Bluegreen Vacation Club Trust, which interest is defined as a "timeshare estate" under F.S. Ch. 721. The duration of this timeshare interest is intended to be perpetual, so long as the Trust Agreement continues. The term of the Vacation Plan is intended to be perpetual; provided, however, that the Resort Interests at each Component Site included within the Vacation Plan are fee simple property interests and either (1) continue until such time as indicated in the Component Site Underlying Declaration at which time the timeshare plans may be extended for one or more additional periods; or (2) are intended to be perpetual pursuant to the Component Site Underlying Declaration. The Trust Agreement is irrevocable, so long as any Owner Beneficiary has a right to occupy any portion of the Trust Estate. Upon termination of the Trust, the Trustee is obligated under the Trust Agreement and as part of the Owner Beneficiary Rights to convey the Property to Purchaser by quitclaim deed if title to the Property is held by the Trustee, so long as Purchaser is not in default of his or her Owner Beneficiary Obligations. Such transfer shall be subject to the rights of a holder of any outstanding loan or mortgage related to the Property created by the Purchaser and related to the Property to request conveyance of the Property to it.

(b)The Property and other Accommodations and Facilities comprising the Trust Estate (and subject to the Trust Agreement) are owned in fee simple (or leasehold title, if within the Club Pono Kai Component Site Resort) by Developer/Seller at the time of Purchaser's execution hereof and are to be or have been conveyed to the Trustee by deed from Developer/Seller or its affiliate. The Trustee's obligation, pursuant to the Trust Agreement, is to make such Property and other Accommodations and Facilities within the Bluegreen Vacation Club Trust Estate available for the use, occupancy and enjoyment of the Owner Beneficiaries. Purchaser, by the acquisition hereunder, shall be an Owner Beneficiary pursuant to the Trust Agreement. The interest of Developer/Seller in the Accommodations and Facilities is that Developer/Seller presently owns such. Developer/Seller is entitled to designate Owner Beneficiary Rights with appurtenant Vacation Points to Purchasers pursuant to the terms of the Trust Agreement. After conveyance to the Trustee as set forth herein, Developer/Seller has no other actual interest, including interest to control, the Accommodations or Facilities conveyed to the Trustee. Prior to Developer/Seller issuing a deed of the Property to the Trustee as agent for Purchaser, the Property (timeshare interest) shall be released from any lien as may exist encumbering the Property by payment of release fees to the lender thereof or by full satisfaction of said mortgage or lien instrument. Upon such conveyance of the Property, Purchaser directs and authorizes Trustee, if the balance of the purchase price above referred to is not paid in full in cash or certified check, to establish a mortgage against the Property in favor of Developer/Seller or Lender or their designee pursuant to the terms herein to secure the Purchaser's payment therefore.

2.  **DEPOSITS.**  The initial deposit or subsequent payments made pursuant to this Bluegreen Owner Agreement by Purchaser to Developer/Seller shall, prior to closing, be held in escrow pursuant to the provisions of Section 721.08, Florida Statutes, with Old Republic National Title Insurance Company, 9900 Covington Cross Drive, Suite 290, Las Vegas, NV 89144 ("Escrow Agent"). The Escrow Agent shall furnish Purchaser with a written receipt for the initial deposit and subsequent payments. Escrow Funds held by the Escrow Agent may be invested in securities of the United States Government, or any agency thereof, or in savings of time deposits in institutions insured by an agency of the United States Government. Developer/Seller shall retain the interest generated by any such investment. All monetary amounts recited in this Agreement shall be paid in U.S. Funds.

3.  **THE PROPERTY.**  The Property shall be the Property, as identified above, which has been allotted a number of Vacation Points determinative of occupancy rights and equivalent to the Vacation Points set out hereinabove provided to Purchaser hereunder. The Property is a Resort Interest under the Trust Agreement. By execution hereof, Purchaser directs and authorizes conveyance of the Property to the Trustee. For each Purchaser provided the Owner Beneficiary Rights and appurtenant Vacation Points from Developer/Seller, Developer/Seller agrees to convey to Trustee a Resort Interest; or cause its affiliates, Facilitator or other third party facilitator to convey to Trustee a Resort Interest, which has been established as requiring for occupancy Vacation Points equivalent to the Vacation Points appurtenant to the Owner Beneficiary Rights of the respective purchaser. The Property and all other property conveyed to the Trustee pursuant to this Agreement and any other Bluegreen Owner Beneficiary Agreement is considered the Trust Estate and property available for personal use and occupancy by all purchasers of Owner Beneficiary Rights, subject to the Trust Agreement and established reservation procedures. The Property conveyed to the Trustee pursuant to this Agreement is in fee simple (or leasehold, if within the Club Pono Kai Component Site Resort) and is intended to remain in title to the Trustee perpetually, subject to deletion rights as set forth hereinafter and as otherwise provided for in the Trust Agreement. The Property is subject to the applicable Underlying Declaration identified in Exhibit 9 of the Bluegreen Vacation Club Public Offering Statement.

4.  **COMMON ASSESSMENT FEES AND CLUB DUES.**  Purchaser, as an Owner Beneficiary, agrees to pay Common Assessment Fees and Club Dues as set forth in the Bluegreen Vacation Club Public Offering Statement, Trust Agreement, the related documents, including the Club By-Laws, and this paragraph. Purchaser, as an Owner Beneficiary, agrees to pay common expense assessments, as set forth in the Underlying Declaration related to the Property, to the extent they are not included in the Common Assessment Fees. Such obligation to pay the foregoing amounts shall continue regardless of the conveyance of the Property to the Trustee. Purchaser shall pay to the Vacation Club Managing Entity (as hereafter defined) such foregoing amounts related to the Property at the time that the same are due and payable. Such obligation shall include the obligation to pay any special assessments related to the Property, as well as any real estate taxes attributable to the Property that are not otherwise included in the Common Assessment Fees.

The annual Common Assessment Fees, inclusive of ad valorem real estate taxes, currently payable by Purchaser acquiring Annual Vacation Points and an Annual Timeshare Interest hereunder shall equal a base amount of Three Hundred Seventy Three Dollars ($373.00) plus an added amount equal to $0.0660 times the number of Vacation Points appurtenant to the Owner Beneficiary Rights herein allocated to the Purchaser; provided, however, the Annual Common Assessment Fees, inclusive of taxes, currently payable by a Purchaser acquiring Biennial Vacation Points and a Biennial Timeshare Interest shall equal a base amount of Three Hundred Seventy Three Dollars ($373.00) plus an added amount equal to $0.0330 times the number of Vacation Points appurtenant to the Owner

Beneficiary Rights herein allocated to the Purchaser. Each Purchaser/Owner Beneficiary shall only be assessed one base amount (currently $373.00) annually without regard to the number of Vacation Points allocated to such Purchaser/Owner Beneficiary. The calculation of Common Assessment Fees is set forth in Part E to the Trust Fund Budget attached in Exhibit 8 of the Public Offering Statement and is calculated by comparison of the number of Vacation Points appurtenant to the Owner Beneficiary Rights allocated to Purchaser as set forth herein compared to the total number of Vacation Points allocated to all Owner Beneficiaries within Purchaser's respective Common Assessment Fee method group. This allocation may be altered if additional or less Common Assessment Fees are needed because, for example, Component Site fees or taxes increase or decrease. Bluegreen Vacation Club, Inc. has the right, pursuant to the Club By-Laws, to amend the calculation (including the base amount and multiplier) of such Common Assessment Fees. Common Assessment Fees will vary from year to year and are likely to increase on an annual basis due to normal cost of living increases such as cost of labor, utility costs, taxes, insurance and other common expenses and fees.

In the event Purchaser is already an Owner Beneficiary at the time of execution of this Agreement, Purchaser agrees to have the Annual Common Assessment Fees determined in this same manner as to all of the Vacation Points allocated to Purchaser, whether allocated previously or hereunder. The Annual Common Assessment Fees due annually on the first day of the respective Purchaser's Owner Use Year. Purchaser will be billed a few days after closing for the Annual Common Assessment Fees for the current year, and the month prior to the start of the Purchaser's Owner Use Year each year thereafter. If the foregoing Annual Common Assessment Fees are not paid when due, default interest plus a late fee may be charged by the Trustee, which default interest is 1.5% of the unpaid balance per month and which late fee shall be in an amount of 5% of the amount due or $25.00, whichever is greater.

Purchaser understands and agrees that Purchaser shall be responsible for the payment of Club Dues, in addition to common expenses and Common Assessment Fees. Club Dues are assessments resulting from the implementation of the Bluegreen Vacation Club plan and are representative of a common expense attributable to such implementation. Club Dues are established pursuant to the Estimated Operating Budget and Line Item Analysis attached in Exhibit 8 of the Public Offering Statement, which describes the various revenues and expenses associated with the operation of Bluegreen Vacation Club. Club Dues for the first year of participation within the Bluegreen Vacation Club will be billed to Purchaser a few days after closing. Thereafter, Club Dues for all Owner Beneficiaries, including Biennial Owner Beneficiaries, are due annually on the first day of the respective Purchaser's Owner Use Year. Each Purchaser/Owner Beneficiary shall only be assessed one Club Dues amount annually without regard to the number of Vacation Points allocated to such Purchaser/Owner Beneficiary. Club Dues are payable without a late fee, within 15 days after the due date. If Club Dues are not paid within 15 days after the due date, default interest in the amount of 1.5% of the unpaid balance per month and a late fee in the amount of 5% of the amount due or $25.00, whichever is greater, may be charged by the Trustee. Club Dues are currently $139.00 per year (plus tax, if applicable) and automatically include Purchaser's membership in the external exchange program then affiliated with Bluegreen Vacation Club (which includes the exchange program's annual renewal fee). Unless otherwise permitted by the Florida Vacation Club Act, as may be amended from time to time, in no event shall Club Dues in a given year exceed one hundred twenty five percent (125%) of the Club Dues for the previous year. Purchasers will only be assessed a special assessment in accordance with the Club By-laws. Failure to pay Common Assessment Fees or Club Dues when due shall cause a lien to be filed against the Property pursuant to the Trust Agreement and Club By-Laws.

5.  **PURCHASER'S ACKNOWLEDGMENTS.** Purchaser acknowledges by execution of this Agreement that, prior to the execution of this Agreement, Purchaser has received and had an opportunity to read a copy of the Bluegreen Vacation Club Multi-Site Public Offering Statement and the Exhibits attached thereto relating to the Bluegreen Vacation Club and the Property, as well as a copy of any applicable exchange program documents. Purchaser further acknowledges and agrees that Purchaser's reservation and/or use of the Accommodations and Facilities is subject to the Trust Agreement and the reservation procedures and that each Owner Beneficiary shall have rights to reserve use of the Accommodations and Facilities on a first-come-first-serve basis, subject to the home resort priority reservation right held by Purchaser and certain other Owner Beneficiaries. Purchaser further acknowledges, agrees and represents that the Property and the rights and appurtenances described herein (in particular the allocated appurtenant Vacation Points) and membership in the Bluegreen Vacation Club are being purchased only for Purchaser's personal use and not for any investment potential or any possible rent returns, tax advantages, depreciation, guaranteed buy-back, as Purchaser's principal residence, or for any commercial purpose whatsoever ("commercial purpose" includes, but is not limited to, a use or purpose that the Developer or the Board of the Association, in its discretion, could reasonably conclude constitutes a commercial enterprise or which otherwise suggests an intent or expectation to derive profit), all of which Purchaser acknowledges and agrees are prohibited and not part of the subject transaction. Purchaser acknowledges that the Property as hereinabove designated, and other real property has been or will be submitted to a timeshare regime in accordance with the applicable Underlying Declaration. The Property shall be allocated voting rights, assessments and other obligations as set forth within the applicable Underlying Declaration and related legal documentation. Transfer to the Trustee of the Property as specified herein by Purchaser constitutes Trustee's membership in the owners' association existing in respect to the Property.

6.  **MODIFICATIONS AND CHANGES.** Purchaser hereby authorizes the Developer/Seller and/or its affiliates, as the Developer/Seller may deem necessary, to record among the public records of the counties in which the Accommodations and Facilities contained within the Trust Estate may be located, such documents, instruments and exhibits as are required to be filed under the laws of the State of Florida, or other applicable state, in order to create and maintain the Accommodations And Facilities pursuant to Florida law, or other applicable state law, including but not limited to the Florida Timeshare Act. Developer/Seller reserves the right to make changes itself, or through any of its designees, to any such documents, instruments and exhibits as aforesaid, or as Developer/Seller, governmental authorities having jurisdiction over any of the Accommodations And Facilities or the title insurance company may require or deem necessary, provided the changes do not materially and adversely alter Purchaser's rights as an Owner Beneficiary.

7.  **FINANCED PURCHASE.** If Purchaser desires purchase money financing in connection with the transaction contemplated hereunder, a loan application will be completed and submitted by Purchaser as part of this Agreement. In such event, this Agreement shall be contingent upon Purchaser obtaining a loan equivalent to a commitment for the amount specified in the face of this Agreement. If the Purchaser fails to qualify for purchase money financing, this Agreement is null and void and all moneys paid by Purchaser will be refunded. Purchaser acknowledges any such loan shall require Trustee to execute, grant, and deliver a mortgage or an equivalent instrument encumbering the Property (the "Mortgage") to Developer/Seller or Lender or their designee on behalf of Purchaser, which Mortgage shall provide the Property as collateral for such loan, and to the extent that the Trustee is required by Developer/Seller or Lender to execute such Mortgage, Purchaser hereby directs and authorizes the Trustee to execute, grant, and deliver such Mortgage. Purchaser shall deliver to Developer/Seller or Lender a Promissory Note (the "Note") (together with the Mortgage executed by Trustee and such security instruments requested by Developer/Seller or Lender) for the balance of the Purchase Price if such is not paid for fully, at closing, in cash or certified funds. Purchaser agrees to provide a security instrument, including a UCC financing statement, to Developer/Seller, Lender, or their designee and their respective assignees, respecting Purchaser's Owner Beneficiary Rights, including appurtenant Vacation Points, if requested to do so in connection with any such purchase money financing. Trustee shall not be liable or responsible for payment of any Mortgage executed by Trustee on behalf of Purchaser nor shall Trustee assume any such Mortgage upon its acceptance of title to the Property. Developer/Seller and Lender reserve the right to charge Purchaser a reasonable fee for services performed by or on behalf of Developer/Seller or Lender in connection with this loan, including but not limited to services such as providing a payment history or copies of statements to Purchaser, etc. Upon repayment in full of such purchase money loan, Purchaser shall pay to Developer/Seller or Lender the stipulated cost of $25 for a loan payoff processing fee. In no event shall the interest rate charged in connection with the purchase money financing exceed the maximum interest rate permitted by applicable law.

8.  **CLOSING AND TITLE.** Purchaser shall execute any necessary documents in the form supplied by Developer/Seller as relates to the Property and this transaction prior to closing.  Trustee shall be delivered at closing on behalf of Purchaser a Deed conveying to it fee simple title (or leasehold title, if within the Club Pono Kai Component Site Resort) in the Property free and clear of all encumbrances except conditions, limitations, zoning and easements of record at the time of closing, the terms and conditions of the Underlying Declaration and taxes for the then current and all subsequent years.  Purchaser agrees that he/she shall be obligated to keep current such purchase money financing as is owed in respect to its acquisition of the Property and Purchaser acknowledges that any failure by Purchaser to do so may result in the deletion, cancellation or suspension of Purchaser from the Bluegreen Vacation Club.  Developer/Seller may deliver to Purchaser a certificate or other evidence of the transactions set out herein as relates to the Property, Owner Beneficiary Rights and appurtenant Vacation Points.  Closing will be on such date and at such place as is specified by Developer/Seller or it may be by mail, if authorized by Developer/Seller.  All representations, duties, obligations and agreements of the Purchaser under the terms and conditions of this Agreement shall survive the closing.  Trustee may deliver a Mortgage to Developer/Seller, Lender, or their designee in respect to the Property at closing, provided such Mortgage is limited to the Purchaser's loan and such creates no liability to the Trustee other than recourse to the Property.  Pursuant to the terms of the Trust Agreement, the conveyance of the Property to the Trustee will be subject to the foregoing Mortgage granted by Trustee on behalf of Purchaser, provided that Trustee shall not assume any liability therefor.  It shall be Purchaser's obligation to maintain all payments on the Note and to assure performance of the Mortgage, including all terms, conditions and covenants thereof.  Please refer to Section III.9.C of the Text of the Multi-Site Public Offering Statement for a full description of the status of title of the Accommodations and Facilities in the Bluegreen Vacation Club.

9.  **REFUND PRIVILEGES.** In the event Purchaser cancels this Agreement during the applicable cancellation period, Developer/Seller (or Lender acting in lieu thereof) will refund to the Purchaser the total amount of all payments made by the Purchaser under this Agreement, reduced by the proportion of any Contract Benefits the Purchaser has actually received prior to the effective date of the cancellation.  Such Contract Benefits shall include, but not be limited to, (a) the value of the materials delivered to Purchaser-hereby stipulated to be no more than seventy-five dollars ($75.00)-exclusive of the Multi-Site Public Offering Statement and other documents required to be provided to Purchaser under applicable Florida law, and not returned by the Purchaser to the Developer/Seller in satisfactory condition, reasonable wear and tear excepted and (b) if the Purchaser has used or occupied any Bluegreen Vacation Club Component Site resort for more than 12 hours prior to delivering a notice of cancellation in accordance with the provisions hereof, a reasonable occupancy charge equal to the fair market nightly rental rate-hereby stipulated to be not less than one hundred fifty dollars ($150.00) per night plus the cost for damages, if any, to the applicable Component Site resort directly attributable to the Purchaser's use or occupancy thereof.  The refund shall be made within twenty (20) days after Bluegreen's receipt and acceptance of the notice of cancellation, or within five (5) days of receipt of funds from the Purchaser's cleared check, whichever is later.

10.  **PURCHASER'S BREACH/DEFAULT.** Time is of the essence of this Agreement, except where otherwise specifically provided for herein.  After expiration of the applicable cancellation period, failure to close after demand or to make payments within the time provided for herein, or failure to comply with any of the provisions of this Agreement, shall be considered a breach of this Agreement and all sums paid by Purchaser hereunder shall be retained by the Developer/Seller (or Lender) as liquidated and agreed damages and not as a penalty.  In addition, any termination of this Agreement as a result of Purchaser's breach/default of any provisions herein shall not relieve Purchaser of any obligations as may be owed to Developer/Seller (or Lender) or Bluegreen Vacation Club, Inc. hereby, including without limitation, obligations relating to payment of the remaining balance of the purchase price and outstanding Club Dues and Common Assessment Fees. Purchaser shall be liable for Developer/Seller's reasonable attorney's fees and costs incurred by it by virtue of any litigation as to the parties' rights hereunder if the Developer/Seller is the prevailing party.  Purchaser acknowledges and agrees that in the event Bluegreen Vacation Club, Inc. (or the Vacation Club Managing Entity), refers Purchaser's outstanding Club Dues and/or Common Assessment Fees account(s) for collection, Purchaser shall also be obligated to pay, in addition to the principal amount owed by Purchaser hereunder in respect thereto, costs and collection fees in the maximum amount permitted by law.  Purchaser agrees to defend and indemnify Developer/Seller (and Lender) against all claims of real estate brokers or sales personnel due to acts of Purchaser or Purchaser's representatives, other than brokers or sales personnel employed by the Developer/Seller (and Lender).

11.  **RADON GAS.** Radon is naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over a period of time.  Levels of radon that exceed federal and state guidelines have been found in buildings in Florida and other states.  Additional information regarding radon and radon testing may be obtained from your County Public Health Unit. The foregoing notice is provided in order to comply with state law and is for informational purposes only.  Developer/Seller does not conduct radon testing with respect to any Accommodations in any Component Site resort and specifically disclaims any and all representations or warranties as to the absence of radon gas or radon producing conditions in connection with any Component Site resort.

12.  **BLUEGREEN VACATION CLUB MEMBERSHIP.** Purchaser acknowledges that as an Owner Beneficiary, he/she will be a Class A Member of the Bluegreen Vacation Club, Inc., a Florida non-profit corporation.  Purchaser agrees to be bound by the Articles of Incorporation and By-Laws, together with all rules and regulations as may be adopted from time to time by Bluegreen Vacation Club.  Class A Membership and the voting rights related thereto are not separable from Owner Beneficiary Rights.

13.  **INCORPORATION OF TRUST AGREEMENT.** The parties hereto agree that the terms of the Trust Agreement are incorporated herein by this reference. The parties hereto further agree that the Trust Agreement may be amended, from time to time, pursuant to the terms of paragraph 10.4 of such Trust Agreement.

14.  **ADDITIONS TO, DELETIONS FROM, AND SUBSTITUTIONS OF TRUST ESTATE.** Developer/Seller is authorized and empowered to add to the Trust Estate additional Accommodations and Facilities, as it may, in its sole discretion, determine from time to time.  Any such additions shall be made pursuant to the terms of the Trust Agreement.  Deletions of Accommodations and Facilities comprising the Trust Estate may occur as a result of deletion by casualty, deletion by eminent domain, or automatic deletion, all as further set forth in the Trust Agreement.  Deletions of Component Sites may occur as a result of automatic deletion as further set forth in the Trust Agreement.  In the event all or any portion of the Trust Estate is deleted from the Trust, a sufficient number of Owner Beneficiaries of the Trust will also be deleted so as to maintain no greater than a One-to-One Owner Beneficiary to Accommodation Ratio.  Deletions shall comply with the terms of the Trust Agreement.  Upon an Owner Beneficiary defaulting on his or her Owner Beneficiary Obligations, the Trustee may delete and cancel such Owner Beneficiary as a Beneficiary under the Trust Agreement subject to the terms of the Trust Agreement and compliance with the lockout rules of F.S. §721.13(6).  Upon such deletion, the Trustee shall perform pursuant to the terms of the Trust Agreement.  Neither the Trustee nor any Beneficiary shall be authorized to make any substitutions to any of the Trust Estate, except for replacements as provided above or except as may otherwise be permitted pursuant to F.S. Ch. 721.

15.  **DELETION, CANCELLATION OR SUSPENSION OF PURCHASER.** If Purchaser defaults in his or her Owner Beneficiary Obligations, the Purchaser may be deleted, suspended or cancelled as a Beneficiary under the Trust Agreement pursuant to the terms of the Trust Agreement, the By-Laws of the Club and subject to compliance with the lock-out rules of F.S. §721.13(6); provided, however, before any such deletion, cancellation or suspension, Purchaser shall be entitled to the rights as set forth in the lockout rules of F.S. §721.13(6) and in the Trust Agreement and By-Laws of the Club, including the right to cure such default.

**16. VACATION POINTS.** The number of Vacation Points authorizing the personal, non-commercial use of Accommodations and Facilities within the Bluegreen Vacation Club Trust outstanding and allocated to individual purchasers who are members of the Club shall at all times correspond equally to (or an amount less than) the actual Vacation Point value of Accommodations and Facilities owned/held by the Trustee. Each time an Owner Beneficiary is added (through issuance of Owner Beneficiary Rights and appurtenant Vacation Points pursuant to a Bluegreen Owner Beneficiary Agreement entered into by Developer), (i) Developer, Facilitator or their affiliate shall convey to the Trustee an additional Resort Interest equivalent in Vacation Points value as has been provided to the incoming Purchaser or (ii) the incoming Purchaser shall convey to the Trustee his or her Resort Interest equivalent in Vacation Points as has been provided to the incoming Purchaser. Vacation Points and Class A Membership in the Club are not separable from Owner Beneficiary Rights and may not be used for any commercial purpose.

**17. ESTABLISHMENT OF VACATION POINT VALUE.** Occupancy of Accommodations within Bluegreen Vacation Club Trust is based upon Vacation Points. The minimum number of Vacation Points presently required to be allocated to any one Purchaser is 3,000. The allotted use allocation of each Vacation Point was initially established at a $1.00 use valuation per Vacation Point, which allocation relates to a balancing of demand for requested occupancy with a determined number of Vacation Points equating to a daily use. Such valuation is for demonstrative use purposes only and Vacation Points have no independent cash or other monetary value. Developer/Seller reserves the right to increase or decrease such use allocation, from time to time, as determined by Developer/Seller in its sole discretion. Each Resort Interest made a part of the Bluegreen Vacation Club will be assigned a Vacation Point use value. The number of Vacation Points allocated to a Purchaser will determine which Accommodations or Facilities, and at which times of the year, such may be reserved and occupied by Purchaser or any other Owner Beneficiary. In establishing the Vacation Point value of each Accommodation, Developer/Seller will take into account the location and anticipated relative use demand at each Component Site that the Developer/Seller intends to offer to the Trustee as a part of the Bluegreen Vacation Club Trust, and Developer/Seller shall use its best efforts, in good faith and based upon all reasonably available evidence under the circumstances, to further the best interests of all Purchasers of the Bluegreen Vacation Club as a whole with respect to the opportunity to use and enjoy the Accommodations and Facilities of the Bluegreen Vacation Club Trust. The Vacation Point value may be periodically adjusted from time to time in order to respond to actual Purchaser use pattern and changes in Purchaser use demands for the Accommodations existing at that time within the Bluegreen Vacation Club Trust.

**18. SAVING AND BORROWING OF VACATION POINTS.** Purchasers will be allowed to save Vacation Points from their current Owner Use Year for use in the next succeeding Owner Use Year and borrow Vacation Points from the next succeeding Owner Use Year for use in the current Owner Use Year in accordance with the Club rules on saving and borrowing, as such may exist from time to time, including the following: if required by the Vacation Club Managing Entity, Purchasers must pay all Club Dues and Common Assessment Fees attributable to all saved or borrowed Vacation Points. The rules on saving and borrowing may require that Purchasers notify the Vacation Club Managing Entity in writing prior to the termination of the Owner Use Year for which Purchaser desires to save Vacation Points. If Purchaser fails to provide any such required notice all unused Vacation Points for that Owner Use Year shall expire upon expiration of such Owner Use Year. Vacation Points that are properly borrowed but not used in the current Owner Use Year may be saved if permitted by the Vacation Club Managing Entity. The rules on saving and borrowing may also require that Purchasers notify the Vacation Club Managing Entity in writing prior to the commencement of the Owner Use Year for which Purchaser desires to borrow Vacation Points. Vacation Points that are properly borrowed but not used in the current Owner Use Year shall expire upon expiration of the current Owner Use Year and cannot be re-borrowed or saved. Saving and borrowing may be limited, on an annual basis, to a percentage determined, from time to time, by the Vacation Club Managing Entity, whose decision to authorize saving and borrowing will be based upon anticipated relative use demand of each Component Site. The rules regarding saving and borrowing will be exercised by the Vacation Club Managing Entity in good faith and based upon all reasonably available evidence under the circumstances with the objective to further the best interest of the Purchasers of the Bluegreen Vacation Club Trust as a whole with respect to their opportunity to use and enjoy the Accommodations and Facilities of the Plan. The rules may provide that any saving and borrowing may be subject to a charge.

**19. NON-TRANSFERABILITY OF VACATION POINTS.** Vacation Points are not separable from Owner Beneficiary Rights and will not be transferable from one Owner Beneficiary to another so as to authorize increased year to year usage. All Owner Beneficiaries are subject to the By-Laws of the Club. In addition, as further set forth in the text of the Multi-site Public Offering Statement and the Club By-Laws, certain benefits and facilities of the Plan including, without limitation, membership in the Bluegreen VIP Program, whether Basic or Enhanced/Traveler Plus Membership, are personal to each Owner Beneficiary and are not assignable or transferable, unless such transfer is facilitated by the Developer/Seller or its authorized agents.

**20. RESERVATION GUIDELINES.** The Vacation Club Managing Entity shall establish, from time to time, reservation guidelines and rules and regulations which shall be binding upon the Purchaser and all other Owner Beneficiaries. Such reservation guidelines and rules and regulations may establish the nightly minimum basis for use of Accommodations and Facilities, weekend and holiday use of Accommodations and Facilities, split-week reservations regarding Accommodations and Facilities, and bonus time use of Accommodations and Facilities.

**21. CONVERTING MEMBER RIGHTS.** Purchaser acknowledges that the Club includes Converting Owner Beneficiaries (Converting Members) who are those who held title to a Resort Interest prior to their converting into membership within the Bluegreen Vacation Club. Rights of Converting Members are set forth in the Bylaws of the Club.

**22. PRE-AUTHORIZED CHECK PLAN.** Purchasers who enroll in the Pre-Authorized Check Plan ("PAC Plan") (a) authorize the withdrawal, by debit entry or otherwise, from a depository account specified by Purchaser (the "Account"), amounts on the recurring dates each month sufficient to make payments required under this Agreement and/or the Note contemplated hereunder and (b) acknowledge and agree that the terms and conditions respecting the PAC Plan as set forth in the Note and the PAC Plan Agreement are incorporated herein by this reference.

**23. CONSTRUCTION OF SUBJECT PROPERTY AND AMENITIES.** If the subject Property is not complete, it is anticipated that it will be complete by the date estimated for initial possible occupancy; provided, however, in any event Developer/Seller shall complete the subject Property within two (2) years of the date this Agreement is signed by Purchaser, subject only to delays caused by Acts of God, strikes, material shortages or other conditions beyond the Developer/Seller's control which constitute impossibility of Developer/Seller's performance under the law of the state in which the Property is located. As of the date of this Agreement, certain amenities to be completed by the Developer/Seller may not have been completed. To the extent such amenities are identified in the current Bluegreen Vacation Club Multi-Site Public Offering Statement as being not yet completed, the Developer/Seller estimates that such amenities will be completed within two (2) years of the date this Agreement is signed by Purchaser, subject to delays caused by acts of God or other conditions or circumstances beyond the reasonable control of Developer/Seller. Otherwise, the recreational facilities and amenities located in the Bluegreen Vacation Club Component Site Resorts are complete and available for use.

**24. NO ORAL OR WRITTEN REPRESENTATIONS, WARRANTIES.** The parties hereto agree that this Agreement, along with the documents referred to herein, are the only agreements and disclosures between them. Purchaser should not rely upon any representations, oral or written, which are not herein set forth. This Agreement will become effective and binding upon the parties hereto when signed by Purchaser in the space provided herein and received and accepted by Developer/Seller. Except as otherwise provided by law, Developer/Seller makes no warranties, express or implied, whatsoever, regarding the Property, Units, Common Elements or Common Furnishings including but not limited to warranties of merchantability or fitness for a particular purpose. The Multi-site Public Offering Statement, which should be reviewed by each Purchaser, provides additional specificity and explanations regarding the information set out herein and shall provide guidance in the interpretation of any provisions hereof.

**25. FURNISHINGS.** Although all model units are for display purposes only, the Property described herein shall have furniture, appliances, equipment and all accent furnishings substantially similar to or of equal quality to those shown or used in the model. Such furnishings shall be provided by Developer/Seller or by Bluegreen Interiors, LLC, a wholly-owned subsidiary of the Developer/Seller. The stipulated retail value of the furnishings will vary between resorts, but is between approximately 2% and 4% of the purchase price of the Property, and is subject to any applicable sales tax. The owners association at the respective component site resort shall own such furnishings or such shall be part of the common elements of the condominium, and in each case the owners association shall be responsible for maintaining and replacing such furnishings within the Property. . .

**26. CERTAIN LITIGATION MATTERS.**

(a)   **MANDATORY ARBITRATION.** All disputes, claims, actions, questions or differences, whether based in or upon contract, tort, statute, fraud, deception, misrepresentation or any other legal theory, brought by or on behalf of Purchaser against any one or more of Developer/Seller, Trustee, Bluegreen Vacation Club, Inc., Bluegreen Resorts Management, Inc., Resort Title Agency, Inc., Escrow Agent, any Lender, or any of their respective affiliates, parents, subsidiaries, officers, directors, shareholders, managers, members, or employees (collectively, the **"Bluegreen Parties"**, each of whom may rely upon and/or enforce the terms of this sub-Section 26(a)), which in any way whatsoever relates to or arises out of this Bluegreen Owner Beneficiary Agreement, the Property, the Bluegreen Vacation Club multi-site timeshare plan, membership in Bluegreen Vacation Club, Inc., the Trust Agreement, and specifically including the marketing, offering, acquisition, sale, use, or occupancy of the Property or Accommodations or Facilities (and related Owner Beneficiary Rights and appurtenant Vacation Points) in connection with the Bluegreen Vacation Club multi-site timeshare plan or the function, form, or operation of the Bluegreen Vacation Club multi-site timeshare plan (collectively, **"Disputes"**), shall be resolved through binding and final arbitration in Broward County, Florida, before a single arbitrator (the **"Arbitrator"**), in accordance with the Commercial Arbitration Rules (the **"Rules"**) of the American Arbitration Association ("AAA") then in effect, except as those Rules may be modified in this Section 26. Notwithstanding the foregoing, any dispute, claim or controversy solely relating to any purchase money financing obtained by Purchaser to acquire the Property in connection with the Bluegreen Vacation Club multi-site timeshare plan shall be exclusively governed by the terms of the applicable lien debt instrument and shall not be subject to this sub-Section 26(a).

Unless the parties to the arbitration otherwise agree in writing or the AAA determines otherwise, (i) the Expedited Procedures of the Rules shall apply in any case in which no disclosed claim or counterclaim exceeds $75,000, exclusive of interest, attorneys' fees, and arbitration fees and costs, and (ii) the Procedures for Large, Complex Commercial Disputes of the Rules shall apply in any case in which any disclosed claim or counterclaim is for at least $500,000, exclusive of interest, attorneys' fees, and arbitration fees and costs. Except as may be required by law, neither Purchaser nor an arbitrator may disclose the existence, content or results of any arbitration hereunder without the prior written consent of the Developer/Seller.

Except as to the applicability and validity of sub-Section 26(b), the Arbitrator, and not any court or agency, shall have exclusive authority to resolve any dispute or issue of arbitrability with respect to this sub-Section 26(a), including as to the jurisdiction of the Arbitrator or relating to the existence, scope, validity, enforceability, or performance of this sub-Section 26(a) or any of its provisions. Any dispute or issue as to the applicability or validity of sub-Section 26(b) shall be determined by a court of competent jurisdiction. Moreover, nothing in this sub-Section 26(a) shall preclude the Bluegreen Parties from seeking interim or provisional relief or remedies in aid of arbitration from a court of competent jurisdiction.

(b)   **WAIVER OF CLASS, COLLECTIVE, AND REPRESENTATIVE ACTION CLAIMS.** Except as otherwise required by law, (i) class, collective, and representative action procedures shall not be asserted, and shall not apply, in any arbitration pursuant to sub-Section 26(a); (ii) no class, collective, or representative action claims shall be asserted against the Bluegreen Parties (each of whom may rely upon and/or enforce the terms of this sub-Section 26(b)) in arbitration or otherwise, by or on behalf of Purchaser; and (iii) Purchaser shall not seek to represent the interests of any other purchaser or Owner Beneficiary (except in a derivative action) as to any claims asserted against the Bluegreen Parties, in arbitration or otherwise. Further, any claims of Purchaser, as Purchaser or as Owner Beneficiary, against the Bluegreen Parties shall not be joined, consolidated, or heard together with any such claims of another purchaser or Owner Beneficiary. The Arbitrator shall have no jurisdiction or authority to compel or permit any class, collective, or representative claim in arbitration, to consolidate different arbitration proceedings, or to join any other party to any arbitration, pursuant to sub-Sections 26(a) or 26(b).

(c)   **WAIVER OF JURY TRIAL.** Purchaser understands and agrees that, pursuant to sub-Sections 26(a) and 26(b), Purchaser is giving up any rights (i) to a trial by jury with respect to all Disputes; and (ii) to appeal or otherwise to seek judicial review of the Arbitrator's award except as provided in sub-Section 26(b) and applicable law.

(d)   **DISCOVERY.** Except for good cause shown, discovery in any arbitration pursuant to this Section 26 shall be limited per side to no more than (i) twenty (20) requests for the production of documents and (ii) five (5) depositions.

(e)   **DISPOSITIVE MOTIONS.** The Arbitrator shall allow, and timely consider and rule on, dispositive motions in any arbitration pursuant to this Section 26. In doing so, the Arbitrator shall apply the standards of review of such motions under the Federal Rules of Civil Procedure.

(f)   **APPLICABLE LAW.** This Section 26 shall be governed and enforced under the Federal Arbitration Act (the **"FAA"**), 9 U.S.C. § 1, et seq., and, to the extent that it does not conflict with the FAA, the Revised Florida Arbitration Code, Fla. Stat. § 682.01, et seq.

(g)   **AWARDS.** Any award in any arbitration pursuant to this Section 26 ("**Award**") shall be in writing and, on the request of any party to the arbitration, shall be a reasoned award. An Award will be final and binding upon the parties, and will be the sole and exclusive remedy between the parties relating to the Dispute, including any claims, counterclaims, issues or accounting presented to the Arbitrator. Judgment upon the Award may be entered in any court having jurisdiction. To the fullest extent permitted by law, no application or appeal to any court of competent jurisdiction may be made in connection with any question of law arising in the course of arbitration pursuant to this Section 26 or with respect to any Award, except for actions relating to enforcement of this Section 26 or any Award or seeking interim or other provisional relief or remedies in aid of arbitration.

(h)   **COSTS AND EXPENSES.** Except as otherwise set forth in this Agreement, each party involved in a Dispute shall bear its own costs and expenses (including attorneys' fees) in connection with any arbitration pursuant to this Section 26. However, if any party prevails on a statutory claim that entitles the prevailing party to attorneys' fees and costs, or if there is a written agreement between the parties providing for attorneys' fees and costs, the Arbitrator may award reasonable attorneys' fees and costs in accordance with the applicable statute or written agreement. In that event, the Arbitrator shall resolve any dispute as to the reasonableness of any fee or cost that may be awarded.

(i)   **SEVERABILITY.** Except as to sub-Section 26(b), if any provision of this Section 26 is adjudged to be void or otherwise unenforceable, in whole or in part, the void or unenforceable provision shall be severed and such adjudication shall not affect the validity of this Agreement or the remainder of this Section 26. If sub-Section 26(b) is adjudged to be void or otherwise unenforceable by

a court of competent jurisdiction, the affected class, collective, or representative action claim(s) shall not be subject to arbitration pursuant to this Section 26.

(j)  SURVIVAL.  The provisions of this Section 26 shall survive any termination or cancelation of this Agreement, and shall survive any termination cancelation or deletion of the Purchaser's membership in Bluegreen Vacation Club, Inc. as may occur in accordance with the terms of this Agreement, the Bluegreen Vacation Club, Inc. Bylaws and the Trust Agreement for a period of time equal to the applicable statute of limitations of any Dispute.

(k)  NON-EXCLUSIVITY. The rights and obligations of any person or entity under this Section 26 shall be in addition to and not exclusive of any other rights or obligations to which any such person or entity may be entitled or subject by applicable law, the Articles of incorporation or Bylaws of Bluegreen Vacation Club, Inc., the Trust Agreement, or any other agreement or instrument.  Except as otherwise provided in Section 26(a), to the extent a provision of this Section 26 conflicts with any provision of the Articles of Incorporation or Bylaws of Bluegreen Vacation Club, Inc., the Trust Agreement, or any other agreement or instrument, the provision of this Section 26 shall control to the extent of the conflict.

(l)  THIRD PARTY BENEFICIARIES.  The parties hereby designate Bluegreen Vacation Club, Inc., Bluegreen Resorts Management, Inc., Trustee, Resort Title Agency, Inc., Escrow Agent, any Lender and each of their respective affiliates, parents, subsidiaries, officers, directors, shareholders, managers, members, and employees, as intended third-party beneficiaries of this Section 26, and each shall have the right to enforce this Section 26.

27. INSULATION.  Pursuant to the FTC Regulations, notice is hereby given that each Unit will have blown, rigid or batt insulation installed in all exterior walls to a minimum thickness of one and one-half (1 1/2) inches, which, according to the manufacturer, will yield an average insulation value of at least R-5.  Further, each Unit with a roofed ceiling will have blown, rigid or batt insulation installed in the ceiling to a minimum thickness of two (2) inches, which, according to the manufacturer, will yield an average insulation value of at least R-7.  Purchaser understands and acknowledges that insulation thickness may be greater and may vary, depending upon local conditions and construction factors, including, but not limited to, such items as wall openings and plumbing or other structures or obstructions within the walls or ceiling which displace the insulation. Purchaser understands and agrees that the foregoing information regarding the R-Value of the insulation is based upon information supplied by the insulation installer, and Developer/Seller makes no representations or warranty regarding same.

28. MISCELLANEOUS.  The terms and provisions hereof shall be deemed independent and severable, and the invalidity of any one provision or portion thereof shall not affect the validity or enforceability of any other provision hereof.

(a)  BINDING EFFECT.  This Agreement is binding upon the parties hereto and their heirs, legal representatives, successors and assigns.  This Agreement represents the entire agreement between the parties hereto and may only be amended or modified by an instrument in writing between the parties.  This Agreement shall be construed in accordance with the laws of the State of Florida, except as may otherwise be provided by applicable law, and shall not be recorded.  The recording of this Agreement by the Purchaser shall be considered a breach of this Agreement and, if Purchaser records this Agreement, it may terminate at Developer/Seller's option.

(b)  DEFINITIONS.  The capitalized terms used herein shall be given the meanings as prescribed to them within the Bluegreen Vacation Club Multi-Site Public Offering Statement and the Trust Agreement and, if not defined therein, shall be given the meanings as provided for in F.S. Chapter 721.  If a term used herein is not defined as aforesaid, then the term shall be given its normal and customary meaning.

(c)  NOTICES.  Any notice to be given under this Agreement shall be duly given to the last known address of the Purchaser by regular certified mail, return receipt requested, and will be effective three (3) days after placing the same in the U.S. Mail, postage prepaid. Any notice to be given under this Agreement to the Developer/Seller shall be given by certified mail, return receipt requested, at the address set forth hereinabove, unless the Purchaser is notified in writing of an alternative address.  By execution of this Agreement, Purchaser agrees to receive future solicitations at the address/phone number(s) given above from Developer/Seller and its affiliates (including, without limitation, Encore Rewards, Inc. and Great Vacation Destinations, Inc.) for their products and services, including without limitation, solicitation by mail, email, fax, and telephone (including by automatic dialing equipment and/or pre-recorded messages).

(d)  FURTHER DESCRIPTION OF PROPERTY.  The parties hereto acknowledge and agree that the Property to be conveyed hereunder is more specifically set forth in the warranty deed conveying the Property to the Trustee as agent for Purchaser, a copy of which will be provided to the Purchaser and terms of which are incorporated herein by this reference.

(e)  OFAC COMPLIANCE.  Purchaser warrants and represents to Developer/Seller that Purchaser is not, and shall not become, a person or entity with whom Developer/Seller is restricted from doing business with under regulations of the Department of Treasury Office of Foreign Asset Control ("OFAC").  Such representation shall include, but not be limited to persons or entities named on OFAC's Specially Designated list and/or Blocked Persons list, or under any statute, executive order (including, but not limited to, the September 24, 2001, Executive Order Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism); or, other governmental action.  Purchaser further warrants and represents that it is not and shall not engage in any dealings or transaction or be otherwise associated with such persons or entities prohibited by OFAC regulations.

(f)  Americans with Disabilities Act.  Certain Accommodations located within the Component Site resorts will be designed for and equipped with handicapped facilities, as set forth and depicted more particularly in the Underlying Declaration and the exhibits thereto. Developer/Seller has advised Purchaser whether the Property that Purchaser is acquiring hereunder is or will be equipped with such facilities.

(g)  Mold Disclaimer.  Mold is found both indoors and outdoors.  The presence of mold may cause property damage or health problems.  Additional information regarding mold and a mold inspection may be obtained from your county public health unit or a professional trained in that field.  The foregoing notice is provided in order to comply with state law and is for informational purposes only. Developer/Seller does not conduct mold inspection with respect to any Accommodations in any Component Site resort, and specifically disclaims any and all representations or warranties as to the absence of mold in connection therewith.

(h)  Florida Construction Disclosure.  CHAPTER 558, FLORIDA STATUTES, CONTAINS IMPORTANT REQUIREMENTS YOU MUST FOLLOW BEFORE YOU MAY BRING ANY LEGAL ACTION FOR AN ALLEGED CONSTRUCTION DEFECT IN YOUR UNIT, CONDOMINIUM, OR INTEREST THEREIN. SIXTY DAYS BEFORE YOU BRING ANY LEGAL ACTION, YOU MUST DELIVER TO THE DEVELOPER/SELLER, A WRITTEN NOTICE REFERRING TO CHAPTER 558 OF ANY CONSTRUCTION CONDITIONS YOU ALLEGE ARE DEFECTIVE AND PROVIDE SUCH PERSON THE OPPORTUNITY TO INSPECT THE ALLEGED CONSTRUCTION DEFECTS AND TO CONSIDER MAKING AN OFFER TO REPAIR OR PAY FOR THE ALLEGED CONSTRUCTION DEFECTS. YOU ARE NOT OBLIGATED TO ACCEPT ANY OFFER, WHICH MAY BE MADE. THERE ARE STRICT DEADLINES AND PROCEDURES UNDER FLORIDA LAW WHICH MUST BE MET AND FOLLOWED TO PROTECT YOUR INTERESTS.

29. MANAGEMENT AGREEMENT.  Bluegreen Vacation Club, Inc. has entered into a Management Agreement with Bluegreen Resorts Management, Inc. (the "Vacation Club Managing Entity") for the management of the Bluegreen Vacation Club Multi-Site timeshare plan. The initial term of the Club Management Agreement was three (3) years commencing May 18, 1994. The Club Management Agreement, pursuant to Section 4 thereof, was automatically renewed for successive three (3) year periods, the most recent of which will expire on May

15, 2018. The Club Management Agreement will continue to be automatically renewed for successive three (3) year terms unless terminated by either party pursuant to its terms. Purchaser understands that the Vacation Club Managing Entity is an affiliate of the Developer/Seller and that management fees are paid to the Vacation Club Managing Entity for management of the Plan pursuant to the Club Management Agreement.

30. For the purpose of Ad Valorem Assessment, Taxation and Special Assessments, the Vacation Club Managing Entity will be considered the taxpayer as your agent pursuant to F.S. §192.037.

31. Accommodations and Facilities may be added to this Multi-Site Vacation Plan without the consent of the Purchasers. The addition of Accommodations and Facilities to this Plan may result in the addition of new Purchasers who will compete with existing Purchasers in making reservations for the use of available Accommodations and Facilities within the Plan, and may also result in an increase in the Annual Assessment against Purchasers for Common Expenses. For more complete details, please refer to Section III.A.6 of the Text of the Multi-Site Public Offering Statement.

32. The Developer is required to provide the Vacation Club Managing Entity with a copy of the approved Multi-Site Public Offering Statement Text and Exhibits filed with the Division and any approved amendments thereto, and any other Component Site documents as described in F.S. §§721.07 or 721.55, that are not required to be filed with the Division, to be maintained by the Vacation Club Managing Entity for inspection as part of the books and records of the Bluegreen Vacation Club Multi-site Vacation Plan.

33. Any resale of this Timeshare Interest must be accompanied by certain disclosures in accordance with F.S. §721.065.