UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CV-61938-RUIZ/STRAUSS

EMMANUEL G. LOUIS, JR., *et al.*,

      Plaintiffs,

v.

BLUEGREEN VACATIONS UNLIMITED, INC., *et al.*,

      Defendants.

                                  /

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon Defendants' Motion to Dismiss First Amended Class Action Complaint and Incorporated Memorandum of Law [DE 27] ("Motion"). This case has been referred to me, pursuant to 28 U.S.C. § 636(b)(1) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, to take all action as required by law on the Motion.  [DE 36].  I have reviewed the Motion, the Response [DE 33] and Reply [DE 35] thereto, and all other pertinent portions of the record.  For the reasons discussed herein, I respectfully **RECOMMEND** that the Motion [DE 27] be **GRANTED IN PART**, with this case being **DISMISSED** *without prejudice* for lack of standing.

## BACKGROUND

Defendants sell vacation or timeshare interests to consumers and provide related financing. *See* First Amended Class Action Complaint ("Complaint") [DE 16] ¶¶ 2-5, 15.  In December 2020, Plaintiffs purchased a vacation/timeshare interest from Defendants, obtaining financing from Defendants in order to complete the purchase. *Id.* ¶¶ 4, 37.  At the time, Plaintiff Emmanuel Louis, Jr. was on active duty with the United States Army. *Id.* ¶¶ 4, 16.  Plaintiff Tamarah Louis is his

dependent spouse.  *Id.*  To purchase the vacation/timeshare interest, Plaintiffs entered into a Bluegreen Owner Beneficiary Agreement ("OBA") with Defendants.  *Id.* ¶¶ 4, 37 & Ex. A.  As reflected therein, by entering into the OBA, Plaintiffs were designated as an Owner Beneficiary under a Trust Agreement, the terms and conditions of which are attached to the OBA.  *Id.* Ex. A. When a purchase is financed (like here), a purchaser is required to deliver a promissory note to the seller for the balance of the purchase price that is not paid in cash at closing.  *Id.* Ex. A, § 7.  The second page of Plaintiffs' OBA reflects a purchase price of $11,500, a 10% down payment of $1,150, and thus, an Amount Financed of $10,350, which is to be paid over 120 months at an interest rate of 16.990%.  *See id.* ¶ 41 & Ex. A.  It also reflects an administrative fee of $450, to be paid along with the $1,150 down payment, for a total initial payment of $1,600.

Plaintiffs allege that they are covered borrowers under the Military Lending Act ("MLA"), *see* 10 U.S.C. § 987, and that their transaction with Defendants violated the MLA.  *Id.* ¶¶ 12, 25, 42-43, 47, 59-60, 75-76, 91-92.  The MLA was implemented to prevent predatory lending practices aimed at members of the military "that serve to 'undermine military readiness, harm the morale of troops and their families, and add to the cost of fielding an all-volunteer fighting force.'"  *Harris v. OneMain Fin.*, No. 3:18-CV-00090-RLY-MPB, 2018 WL 7142126, at *2 (S.D. Ind. June 13, 2018) (quoting *Huntco Pawn Holdings, LLC v. U.S. Dep't of Def.*, 240 F. Supp. 3d 206, 211 (D.D.C. 2016)) (internal brackets omitted).  In addition to other requirements, it mandates that creditors make certain disclosures.  *See* 10 U.S.C. § 987(c)(1).  It also prohibits creditors from requiring borrowers to submit to arbitration and provides that agreements to arbitrate MLA disputes are not enforceable against covered borrowers.  10 U.S.C. § 987(e)(3), (f)(4).  "Any credit agreement, promissory note, or other contract prohibited under this section is void from the inception of such contract."  10 U.S.C. § 987(f)(3).

Counts I and II of the Complaint appear to be two sides of the same coin.  Both counts allege that Defendants violated their disclosure obligations under 10 U.S.C. § 987(c)(1).  However, the only discernible alleged violation from the non-conclusory allegations pertain to the requirement under § 987(c)(1)(A) to provide a "statement of the annual percentage rate of interest applicable to the extension of credit."  As explained in regulations issued by the Department of Defense,[1] the § 987(c)(1)(A) requirement entails providing a "statement of the MAPR [Military annual percentage rate] applicable to the extension of consumer credit."  32 C.F.R. § 232.6(a)(1).  As alleged in Counts I and II of the Complaint, the MAPR:

> should include 1) any credit insurance premium or fee, any charge for single premium credit insurance, any fee for a debt cancellation contract, or any fee for a debt suspension agreement and 2) any fee for a credit-related ancillary product sold in connection with the credit transaction for closed-end credit or an account for open-end credit.

Complaint ¶¶ 67, 82 (quoting 32 C.F.R. § 232.4(c)(1)).  The Complaint alleges that the $450 administrative fee comes within this ambit and thus should have been included in calculating the MAPR.  *See, e.g.*, *id.* ¶¶ 79, 83.  According to Plaintiffs, had the fee been included in the MAPR calculation, the MAPR would have been 18.097% rather than the disclosed rate of $16.990%.  *See id.* ¶¶ 67, 80, 82.

In Count III, Plaintiffs allege a violation of § 987(e)(3) because the OBA contains a mandatory arbitration provision.  Plaintiffs' prayer for relief, which pertains to all counts, seeks a declaration that their agreement with Defendants is void, relief in the form of rescission and restitution, statutory, actual, and punitive damages, and injunctive relief.

---

[1] *See* 10 U.S.C. § 987(h)(1) ("The Secretary of Defense shall prescribe regulations to carry out this section.").

## LEGAL STANDARD

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a "formulaic recitation of the cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679)).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). Courts must accept the factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1229 (11th Cir. 2019); *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1236 (11th Cir. 2019). Likewise, in the context of a motion to dismiss raising a "facial" attack on standing under Rule 12(b)(1), the allegations of the complaint are accepted as true. *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021).[2] But "[c]onclusory allegations,

---

[2] *See id.* ("Attacks on subject matter jurisdiction, which are governed by Rule 12(b)(1), come in two forms: facial or factual attack. A 'facial attack' challenges whether a plaintiff 'has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true

unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

## ANALYSIS

Defendants seek dismissal on standing grounds under Rule 12(b)(1) and also on Rule 12(b)(6) grounds.  As a preliminary matter, they contend that the Court should consider certain documents – in connection with their request for dismissal – related to the parties' transaction even though the documents are not attached to the Complaint.  As discussed in Section A below, I agree with Defendants that these documents may be considered at this stage.  In Section B below, I explain why this case should be dismissed for lack of standing.  Because I recommend dismissal on standing grounds, I do not reach the Rule 12(b)(6) arguments that Defendants raise.

### A.  CONSIDERATION OF DOCUMENTS ATTACHED TO MOTION

Defendants seek to have the Court consider the following documents, which are attached to the Motion (but not to the Complaint): (1) Plaintiffs' December 20, 2020 Promissory Note; (2) a Mortgage Deed;[3] and (3) the financial disclosures provided to Plaintiffs at the time they purchased their vacation/timeshare interest from Defendants.  Ordinarily, courts may not look

---

for the purposes of the motion.' A 'factual attack,' in contrast, challenges the existence of subject matter jurisdiction irrespective of the pleadings, and extrinsic evidence may be considered." (internal citations omitted)); *see also Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008) ("When defending against a facial attack, the plaintiff has 'safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised,' and 'the court must consider the allegations in the plaintiff's complaint as true.'" (citation omitted)).

[3] The Mortgage Deed does not have any bearing on the standing analysis.  It only arguably pertains to one of the Rule 12(b)(6) arguments that I do not reach.

beyond a pleading – including exhibits thereto, which are treated as part of the pleading – when ruling on a motion to dismiss under Rule 12(b)(6). *Crowder v. Delta Air Lines, Inc.*, 963 F.3d 1197, 1202 (11th Cir. 2020); *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1162 (11th Cir. 2019). Nonetheless, documents attached to a motion to dismiss may be considered without converting the motion into a motion for summary judgment if the documents are (1) "central to the plaintiff's claim" and (2) "their authenticity is not challenged." *Crowder*, 963 F.3d at 1202 (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)); *see also Crawford's Auto Ctr.*, 945 F.3d at 1162 (citing *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 (11th Cir. 2015)). A document is central to a complaint when it is "a necessary part of [a plaintiff's] effort to make out a claim." *Kalpakchian v. Bank of Am. Corp.*, 832 F. App'x 579, 583 (11th Cir. 2020) (quoting *Day*, 400 F.3d at 1276). Additionally, the Eleventh Circuit has "held that relationship-forming contracts are central to a plaintiff's claim." *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) (citing *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005)); *see also Kalpakchian.*, 832 F. App'x at 583.

I agree with Defendants that the items attached to the Motion may be considered at this stage without converting the Motion into a motion for summary judgment. As an initial matter, Plaintiffs do not challenge the authenticity of the documents in their response. They also do not appear to dispute that the documents are central to their claims. Regardless, the documents are evidently central to their claims. As Plaintiffs allege in their Complaint,

> The Owner Beneficiary Agreement is subject to all of the terms of the Timeshare Condominium declarations and to the terms of the Trust. *All of the documents that are referenced in the Agreement inform the nature of the transaction and no single document reveals the entirety of the rights, obligations and restrictions attendant to the transaction.*

Complaint ¶ 38 (emphasis added).  It is the very documents that Defendants have attached to the Motion that "inform the nature of the transaction" (as Plaintiffs have put it).  In other words, they are the relationship-forming documents.  Moreover, as Defendants posit, Plaintiffs seek the remedy of rescission with respect to the transaction between the parties, effectively seeking to rescind the very documents attached to the Motion.  Simply stated, these documents go to the heart of the Complaint.  *Cf. Kalpakchian.*, 832 F. App'x at 583 ("[T]he contract governing the contractual relationship Kalpakchian alleges Defendants breached goes to 'the very heart' of her contract claim." (citing *Day*, 400 F.3d at 1276)).  As such, they are central to Plaintiffs' claims.  Because they are central and their authenticity is not disputed, it is proper to consider them in conjunction with the Motion.

## B.  STANDING

"Federal courts are courts of limited jurisdiction."  *Gardner v. Mutz*, 962 F.3d 1329, 1336 (11th Cir. 2020) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "The most notable—and most fundamental—limits on the federal 'judicial Power' are specified in Article III of the Constitution, which grants federal courts jurisdiction only over enumerated categories of 'Cases' and 'Controversies.'"  *Id.* (citing U.S. Const. art. III, § 2).  "This case-or-controversy requirement comprises three familiar 'strands': (1) standing, (2) ripeness, and (3) mootness."  *Id.* (citing *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1189 (11th Cir. 2011)).  Standing has been characterized as the "most important" or "most central" of Article III's jurisdictional prerequisites.  *Id.* at 1337 (citations omitted).

"[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  *TransUnion LLC*

*v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) ("The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.").  At the pleading stage, the party invoking federal jurisdiction bears the burden of establishing all three of these standing elements "by alleging facts that 'plausibly' demonstrate each element." *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1337-38 (11th Cir. 2021) (citing *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020)); *see also Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924-25 (11th Cir. 2020) ("[E]ven at the pleading stage, the 'litigant must clearly and specifically set forth facts' to satisfy the requirements of Article III." (citation omitted)); *Am. Civil Liberties Union of Fla., Inc. v. Dixie Cnty., Fla.*, 690 F.3d 1244, 1247 (11th Cir. 2012) ("Standing is a jurisdictional inquiry, and a 'party invoking federal jurisdiction bears the burden' of establishing that he has standing to sue." (citing *Lujan*, 504 U.S. at 561)).  "Mere conclusory statements do not suffice." *Tsao*, 986 F.3d at 1338 (quoting *Iqbal*, 556 U.S. at 678) (cleaned up).

Here, Plaintiffs have failed to plausibly allege that they have Article III standing.  In the Complaint, Plaintiffs allege they have standing "because they suffered a concrete injury in that they are obligated to pay under the terms of an agreement that is void from inception because it violated the MLA and also because they made a substantial down payment."  Complaint ¶ 12. Relatedly, in their response, they argue that "they suffered an injury in fact, namely they paid money to Bluegreen Vacations based on a contract which violates the MLA."  [DE 33] at 5. Monetary injury is a traditional tangible harm that typically constitutes a "concrete injury in fact" for standing purposes. *TransUnion*, 141 S. Ct. at 2204.  The problem is that Plaintiffs failed to allege any facts to plausibly establish any causal connection whatsoever between Plaintiffs'

payment under the contract – their alleged concrete injury – and the challenged actions of Defendants, and they failed to allege any injury in fact that is fairly traceable to Defendants' alleged MLA violations. Plaintiffs also do not allege or argue that they suffered the type of harm that Congress sought to prevent.

As indicated above, while the Complaint generally alleges violations of the MLA, it only contains factual allegations specifying two alleged violations: (1) Defendants disclosed an annual rate of 16.990% when the MAPR was actually 18.097% – an issue caused by Defendants not including a $450 administrative fee in their rate calculation; and (2) the OBA contains an arbitration provision in violation of the MLA. But it is unclear from the Complaint how Plaintiffs' alleged concrete injuries – the payments they have made – are causally connected to these alleged violations. For instance, Plaintiffs do not claim that the alleged miscalculation of the MAPR led to them having to pay anything extra or anything different than what they expected. Nor do they allege that proper calculation and presentation of the MAPR or any of the (unspecified) unmade disclosures would have had any bearing on their decision to accept the contract. Although Plaintiffs contend in their response to the Motion that they were misled, their Complaint does not contain any allegations that they were misled by Defendants' bare procedural violations. At any rate, even if Plaintiffs had alleged that they were misled, they have failed to explain how they were misled.[4] Simply stated, Counts I and II allege nothing more than "a bare procedural violation, divorced from any concrete harm." *Spokeo*, 578 U.S. at 341.

---

[4] *Cf. Littlejohn v. Phoenix Title Loans LLC*, No. CV-18-04250-PHX-SMB, 2020 WL 209936, at *4 (D. Ariz. Jan. 14, 2020) ("[T]he Complaint . . . omits any concrete harm or material risk of harm caused by Defendant's failure to include a correct total of payments or payment schedule. The Complaint does not allege that Plaintiff would have chosen another creditor to borrow from, that she would not have accepted the loan's conditions had the payment schedule or 'correct' total payments been included, or even that she was confused about the loan and missed payments as a result. Without any allegations going to how Defendant's disclosure violations impacted her

Furthermore, even had Plaintiffs alleged a causal connection between Defendants' alleged violations and Plaintiffs' decision to accept the contract and undertake their payment obligations, it is still doubtful that Plaintiffs would have plausible allegations establishing standing.  That is because, even assuming that the $450 fee should have been included in the MAPR and that the MAPR would have thus risen to 18.097%, it is implausible that such a technical violation of the statute would have caused any concrete harm in light of the information that was disclosed. Notably, the OBA attached to the Complaint[5] clearly lays out the following information:

| | | |
|---|---|---|
| 1. | Purchase Price of Property payable by Purchaser. | $11,500.00 |
| 2. | Down Payment ( 10.00% of Line 1). | $1,150.00 |
| 3. | Administrative Fee. | $ 450.00 |
| 4. | State/Local Sales Tax (0.0000000 of Line 1). | $  0.00 |
| 5. | Total Due from Purchaser (U.S. Funds) (Add Lines 1, 3, and 4). | $ 11,950.00 |
| 6. | Initial Deposit Received $ 1,600.00 (CK, MO, MC/VISA, AMEX, DISC). | $ 1,600.00 |
| 7. | Balance of Deposit Required on or before N/A. | $  0.00 |
| 8. | Total Deposit Received (Add Lines 6 and 7). | $ 1,600.00 |
| 9. | Amount Financed $ 10,350.00 for 120 months at  16.990% (Line 5 minus line 8). | |
| 10. | Monthly Payments of: $ 179.81 beginning on January 19, 2021. | |

'informed use of credit,' the Complaint fails to allege a concrete injury. While alleging an injury is certainly possible, and Plaintiff even insinuates in her Complaint that she was confused by the disclosure violations, it is not alleged. Without any sort of allegations of concrete harm or material risk of harm to Plaintiff's informed use of credit by Defendant's disclosure violations, Plaintiff's Complaint falls short of alleging a concrete injury."); *Cottle v. Monitech, Inc.*, No. 7:17-CV-137-BO, 2017 WL 6519024, at *3 (E.D.N.C. Dec. 20, 2017), *aff'd*, 733 F. App'x 136 (4th Cir. 2018) (finding no standing and that TILA disclosure violations were only bare procedural violations where plaintiff had "not alleged that she would have evaluated the terms of her lease differently, made a different choice had she been presented with additional information, or in any way behaved other than she did had defendant not committed its alleged violations").

[5] "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  Fed. R. Civ. P. 10(c); *see also F.T.C. v. AbbVie Prod. LLC*, 713 F.3d 54, 63 (11th Cir. 2013) ("At the motion-to-dismiss stage, we consider the facts derived from a complaint's exhibits as part of the plaintiff's basic factual averments." (citation omitted)); *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) ("[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." (citation omitted)).

Thus, the OBA clearly discloses the fee of $450.  It also clearly shows that the $450 fee is not being financed, but that it is instead being paid along with the 10% down payment of $1,150 (for a Total Deposit of $1,600).  Additionally, the OBA shows that the amount being financed is $10,350, the difference between the 10% down payment and the purchase price.  It also indicates the rate being paid on that amount (16.990%).  Even if the MLA technically requires the MAPR to be disclosed in a different format, the OBA nonetheless makes clear that all pertinent numbers were disclosed.  Accordingly, it is implausible that any technical violation by Defendants caused any concrete harm.

Moreover, while the OBA attached to the Complaint is sufficient on its own to show that all material information was disclosed, the attachments to the Motion, which should be considered for the reasons discussed above, only bolster Defendants' contention that Plaintiffs have failed to demonstrate concrete harm caused by Defendants' actions.  That is because the closing disclosures [DE 27-3] memorializing the transaction between the parties reveal that the $450 administrative fee paid at closing covered title search and recording expenses.  In other words, the fee does not fall within the types of fees that must be included within the MAPR – fees for credit insurance, debt cancellation contracts, debt suspension agreements, and credit-related ancillary products.  32 C.F.R. § 232.4(c)(1).  As such, the disclosed interest rate of 16.990% was the MAPR.  This further undermines the plausibility of Plaintiffs' allegation that they suffered any concrete injury here as a direct or indirect result of the challenged action.

Plaintiffs' claim that they have standing to pursue Count III fares no better.  They seem to indicate the arbitration provision injured them simply because it was impermissible under the MLA to include the provision in the contract.  *See* Complaint ¶ 98.  But they do not even attempt to explain how this provision caused them any concrete harm.  There is no allegation that Defendants

have exercised, threatened to exercise, discussed, or even contemplated invoking the arbitration provision. There is no allegation that the inclusion of the arbitration provision impacted Plaintiffs' decision to accept the contract (nor could there plausibly be), and therefore there are no allegations connecting the payments Plaintiffs have made to the existence of the arbitration provision. In other words, they are seeking relief based on a mere technicality that has not impacted them in any way (let alone any *real* or *material* way).

Notwithstanding the foregoing, Plaintiffs argue that they suffered a concrete injury by paying money to Defendants. While true that economic harm is concrete, Plaintiffs' payment of money to Defendants is not fairly traceable to Defendants' alleged bare procedural violations of the MLA. I fully recognize, as Plaintiffs point out, that establishing causation for standing purposes does not require a party to establish proximate cause. But here, Plaintiffs have failed to plausibly allege that the alleged violations of the MLA even had any *indirect* impact on Plaintiffs' decision to pursue their transaction with Defendants and make a down payment. In other words, the alleged conduct and injury are "too attenuated." *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1088 (11th Cir. 2019).

Additionally, although Plaintiffs argue that Defendants' procedural MLA violations render Plaintiffs' contract with Defendants void, that alone is insufficient to confer Article III standing. *See Wendt v. 24 Hour Fitness USA, Inc.*, 821 F.3d 547, 550-51 (5th Cir. 2016) (rejecting argument that plaintiffs suffered economic injury for Article III standing purposes merely because they paid fees under membership contract that was void under state law); *Mullen v. GLV, Inc.*, 488 F. Supp. 3d 695, 704-05 (N.D. Ill. 2020) (rejecting standing argument where plaintiff claimed to suffer economic injury by paying money under contract that was void under state law).

For the foregoing reasons, the Complaint should be dismissed for lack of standing.[6]

**CONCLUSION**

For the reasons discussed above, I respectfully **RECOMMEND** that the District Court **GRANT** the Motion [DE 27] *in part* and **DISMISS** this case *without prejudice* for lack of standing.[7]

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rodolfo A. Ruiz, II, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained

---

[6] Plaintiffs also argue in their response that they have standing because they requested injunctive relief.  However, when a party seeks different forms of relief, it must separately establish standing for each type of relief sought.  *See TransUnion*, 141 S. Ct. at 2208 ("[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." (citations omitted)); *see also id.* at 2210 ("But a plaintiff must 'demonstrate standing separately for each form of relief sought.' Therefore, a plaintiff's standing to seek injunctive relief does not necessarily mean that the plaintiff has standing to seek retrospective damages." (internal citation omitted)); *Mack v. USAA Cas. Ins. Co.*, 994 F.3d 1353, 1356 (11th Cir. 2021) ("That a plaintiff has standing to bring one claim does not save another claim for which he does not.").  Thus, even if Plaintiffs have standing to seek injunctive relief, that does not mean they have standing to pursue damages.  Moreover, the Supreme Court's observations about injunctive relief and the risk of future harm in *TransUnion* do not support a finding that Plaintiffs have standing here.  There, the Supreme Court discussed how a party who had not yet suffered a concrete harm could potentially establish standing by pointing to the risk of future harm, which could be ameliorated through injunctive relief.  *See TransUnion*, 141 S. Ct. at 2210.  Yet Plaintiffs here do not distinguish between their alleged past injuries and any potential future harm.  More specifically, any potential future harm (presumably, further payments pursuant to their contract with Defendants) is no more traceable to the Defendants' alleged MLA violations than Plaintiffs' alleged past injuries.

[7] While Defendants request dismissal *with prejudice*, dismissal for lack of subject matter jurisdiction or lack of standing should be *without prejudice*.  *See Gardner*, 962 F.3d at 1343 n.11; *MSP Recovery Claims, Series LLC v. QBE Holdings, Inc.*, 965 F.3d 1210, 1221 (11th Cir. 2020); *DiMaio v. Democratic Nat. Comm.*, 520 F.3d 1299, 1303 (11th Cir. 2008).

in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 13th day of May 2022.

Jared M. Strauss
United States Magistrate Judge